## NICHOLS v. STATE.

In Banc. Oct. 10, 1949.

No. 37170 (42 So. (2d) 201)

292

William S. Turner, for appellant.

**George H. Ethridge**, Assistant Attorney General, for appellee.

**Montgomery, J.**

Dennie Ware Nichols was convicted of the crime of burglary with intent to commit larceny in the Circuit Court of Monroe County, and given a sentence of three years. The burglary occurred in the apartment of Mr. and Mrs. L. E. Eikner, who owned the building in which this and two other apartments were situated. There are two apartments on the lower floor. One of these apartments was north of a hall and screened back porch on

the lower floor, and was occupied by Mrs. Charles Weir. The hall and the screened back porch, and the rooms south thereof, constituted the apartment of Mr. and Mrs. Eikner. There was also another apartment upstairs. The hall and the screened back porch were not rented by Mr. Eikner to Mrs. Weir, or any other persons, but they constituted a part of the apartment of Mr. Eikner and no one had any leasehold rights therein. There was a door leading from Mrs. Weir's apartment into this screened back porch, but the entrance to this apartment was at its eastern end. Occasionally, Mrs. Weir would come through this door onto the screened porch and go to the back yard to hang clothes after washing, but this was with the express permission of Mr. Eikner. The tenants in the upstairs apartment would sometimes use this screened porch to get to the back yard, but this was also by permission, and was not a part of their lease contract.

On the night in question, Mr. Eikner and his wife were sleeping in a bedroom on the south side of this screened porch. There was a window from this room opening onto the porch. The bottom window sash was down, and the top window sash was half way down. Before retiring, Mr. Eikner latched the screened door by the hook commonly used for this purpose. At about two or three o'clock in the morning, Mr. and Mrs. Eikner both were awakened by a noise at the back door to the screened porch and heard some one enter the porch. Mr. Eikner turned on the light and went to the window, and thereafter discovered the appellant on this back porch. She had been working for Mrs. Weir for some two or three weeks. On being questioned, the appellant first said she wanted a doctor, and then said she wanted to borrow some money, and then she asked Mrs. Weir, who had heard the disturbance and was looking out, if she wanted her to come to work the following day. Mr. and Mrs. Eikner both say that there was a swing in front of their

bedroom window, and that just inside the window Mr. Eikner's trousers were hanging on the back of a chair, and they heard a noise at this swing as if some one were undertaking to reach into the window. The screen on the door had been cut, and an opening made in the wire large enough to reach through and unhook the latch, and entry was effected onto the back porch in that manner.

The appellant assigns two matters as error. It is first contended that since the defendant did not break the close of any of the three apartments situated in the building, but when discovered was in a place where she and other members of the household were privileged to occupy as tenants in common, defendant was therefore absolutely privileged to be where she was and cannot be convicted of burglary. The facts in this record do not support this contention even if it be a lawful one. We do not pass upon this matter since it is not involved in this record. The screened door had been opened by cutting the screen and raising the latch. The premises of Mr. Eikner had been entered, and appellant was found in the apartment. The screened porch was a part of Mr. Eikner's apartment, and though the other tenants had been on occasion permitted to use it for entrance to the back yard, the porch had not been leased and this use by the tenants was a permissive use and was not the exercise of a leasehold right to the screened porch. The appellant was there between two and three o'clock in the morning. There is nothing in this record showing any right in her to cut the screened door in the manner that she did and enter the porch at that time of the night. We find no merit in this contention.

Secondly, it is contended that the indictment was wholly defective in omitting the names of the occupants of the two remaining apartments. These tenants had no contractual right in this screened porch. It had been reserved to the apartment of Mr. Eikner and his wife, and to them alone. The indictment was proper in not set-

ting out the names of the occupants of the two remaining apartments.

The principal question in this case is regarding the intention of the appellant to commit larceny as charged in the indictment. However, in the case of Moseley v. State, 92 Miss. 250, 45 So. 833, Judge Calhoon laid down the following rule:

"The testimony for the state, which the jury manifestly believed, showed that the room broken into was occupied that night by 11 people, consisting of Mrs. Nicol, her husband, and nine children. The husband and some of the children occupied the bed, and she, with the others, were sleeping on the floor. The burglarious entrance was effected, and the appellant crept across the room, and went to where Mrs. Nicol lay, and pulled her foot. She screamed, and caught him by the collar, whereupon he took fright and ran out, jumping through the burglarized window. It was not shown that anything was stolen. It is unthinkable that the purpose of the burglar was to ravish the woman, and so the jury were left to conclude from all the facts what his purpose necessarily must have been.

"We have examined some of the authorities referred to in the brief of the Assistant Attorney General for the state, and arrived at the conclusion that the verdict was warranted. State v. Fox, 80 Iowa 312, 45 N. W. 874, 20 Am. St. Rep. 425; Commonwealth v. Shedd, 140 Mass. 451, 5 N. E. 254; Steadman v. State, 81 Ga. 736, 8 S. E. 420; Franco v. State, 42 Tex. 276; Woodward v. State, 54 Ga. 106; 6 Cyc., 245, and notes; and notably State v. Worthen, 111 Iowa 267, 82 N. W. 910. In this last case, which is almost identically like the one before us, the court said: 'The defendant insists that, though the motive to enter Fort's house cannot be justified, the intent to steal cannot be inferred from these facts. Some presumptions are to be indulged in against one who enters a building unbidden at a late hour of night, else the

burglar caught without booty might escape the penalties of the law. People are not accustomed in the nighttime to enter homes of others, when asleep, with innocent purposes. The usual object is theft; and this is the inference ordinarily to be drawn, in the absence of explanation, from breaking and entering at night, accompanied by flight when discovered, even though nothing has been taken. With the conditions as shown by the evidence, we think no presumption can be indulged with reference to his design on Grace Fort. Whether he entered to assault her or to steal was a matter to be inferred from all the circumstances.'

''The other authorities referred to are in line with this. Under the circumstances shown in this case, all men are bound to presume that the burglar had some motive, and that that motive was to commit some crime. In the vast majority of instances, nearly all, the intent is to steal; and we decline to reverse because the jury determined that that motive was to commit theft, rather than the very much more unusual and graver offense of rape, which, as we have just stated, is apparently incredible in a room occupied by 11 people.''

We find no error in the judgment of the lower court, and the judgment is affirmed.

Affirmed.