# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-00329-SCT

*ROCHELLE DEANGELO BROWN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/22/2000 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DEWITT T. ALLRED, III |
| | WAYNE SNUGGS |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED- 11/08/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/29/2001 |

**BEFORE PITTMAN, C.J., SMITH, P.J., AND WALLER, J.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Rochelle Deangelo Brown appeals from his conviction for burglary in the Scott County Circuit Court, for which he was sentenced to serve seven years in the custody of the Mississippi Department of Corrections. Edmund Phillips, Brown's appointed appellate counsel, filed a one issue brief and invoked the ***Killingsworth*** doctrine. ***Killingsworth v. State***, 490 So. 2d 849 (Miss 1986). Upon notice of the invocation of the ***Killingsworth*** doctrine, Brown filed a pro se brief. Although Brown presents four issues, we will only address the issue dealing with the weight of the evidence. Finally, we examine Brown's conviction, sentence and appeal in light of the ***Killingsworth*** doctrine and its progeny.

¶2. Finding no reversible error, the conviction and sentence are affirmed.

## FACTS

¶3. Chief Jimmy Rodgers and Assistant Chief Lesley Huff of the Morton Police Department were patrolling one night at 11:45 p.m., when they noticed what appeared to be a man's legs sticking out of a window of a building which housed J&R Auto Muffler and Alignment Service. Upon investigation, the officers found that Brown had entered the building by breaking the window, and they arrested Brown at the scene. As they were arresting him, Brown said that he had seen someone go into the building and was trying to get that person out. Officers Rodgers and Huff and Jimmy Ray Palmer, the owner of the building, went inside but found no one there.

¶4. Officer Huff testified that the business was closed at the time of Brown's entry into the building. Palmer testified that tools and other items of value were kept in the building and that Brown had not been given permission to enter. When Palmer left the building at about 4:00 p.m. that afternoon, the building was locked up and the window was intact.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN DENYING BROWN'S MOTION FOR DIRECTED VERDICT.

¶5. In ruling upon a motion for a directed verdict, all of the State's evidence must be accepted as true, together with any reasonable inferences that can be drawn from that evidence. If sufficient evidence exists to support a verdict of guilty, the motion should be denied. *Wall v. State*, 718 So. 2d 1107, 1113-14 (Miss 1998).

¶6. Brown argues that since the crime of burglary was not complete at the time of his arrest and there was no proof of his intent, he should only be charged with trespassing. The State responds that Brown failed to rebut the presumption of intent to commit an unlawful act.

¶7. The elements of the crime of burglary are that the perpetrator, acting with an intent to steal items of value, breaks and enters a shop where the valuable items are kept. Miss. Code Ann. § 97-17-33 (2000) .[1] Here, the breaking and entering was proven from the officers' direct, eyewitness testimony. Brown was caught red-handed hanging out of a freshly broken window of an auto repair shop.

¶8. Nevertheless, since no item of value was found on Brown's person, he believes the State failed to prove intent. Intent, however, may be inferred from the circumstances:

> "Some presumptions are to be indulged in against one who enters a building unbidden at a late hour of night, else the burglar caught without booty might escape the penalties of the law. People are not accustomed in the nighttime to enter homes of others, when asleep, with innocent purposes. The usual object is theft; and this is the inference ordinarily to be drawn in the absence of explanation from breaking and entering at night accompanied by flight when discovered, even though nothing has been taken."

*Nichols v. State*, 207 Miss. 291, 296-97, 42 So. 2d 20, 21 (1949) (quoting *State v. Worthen*, 82 N.W. 910, 911 (Iowa 1900)). Also, "[i]ntent is an emotional operation of the mind, and is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. Defendant's intention is manifested largely by the things he does." *Newburn v. State,* 205 So. 2d 260, 265 (Miss. 1967).

¶9. Considering the witnesses' testimony, the fair and logical inference is that Brown entered the shop with the intent to steal. The jury was correct in finding Brown guilty of burglary, since he broke in at a late hour and had no reasonable explanation for his entering the shop without permission of the owner.

¶10. We find this assignment of error to be without merit.

### II. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF EVIDENCE AND EVIDENCED BIAS AND PREJUDICE ON THE PART OR THE

**JURY AGAINST BROWN.**

¶11. The standard of review when considering a challenge to the weight of the evidence is well established: "In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will only reverse when convinced that the circuit court has abused its discretion in failing to grant a new trial." *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997).

¶12. We cannot say that the conviction in light of the evidence presented constitutes an unconscionable injustice. The elements of burglary were proven by the State: Brown was caught breaking into a business without permission from the owner. His intent to steal items of value within the business may be reasonably inferred from the facts that he broke the window in order to gain access to the building and that he did so late at night when no one would be there. "Only in the cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." *Collier v. State*, 711 So. 2d 458, 462 (Miss. 1998).

¶13. This assignment of error is without merit.

### III. WHETHER APPELLATE COUNSEL FOLLOWED THE CORRECT PROCEDURE IN FILING A *KILLINGSWORTH* BRIEF.

¶14. Brown's appellate counsel felt that the appeal was largely frivolous and filed a one page, one issue brief. He invoked the *Killingsworth* doctrine and informed Brown that if he wanted to raise any other issues he had twenty-five (25) days to do so. Brown then filed a pro se brief.

¶15. In the *Killingsworth* case, appellate counsel attempted to withdraw and informed the Court that there were no meritorious assignments of error which could be raised on appeal. *Killingsworth v. State*, 490 So. 2d 849 (Miss. 1986). We did not allow counsel to withdraw, but required him to file a brief for the appellant. We further required counsel to certify that he had furnished the appellant with a copy of the brief and that he had informed the appellant that the appellant would be allowed 20 days from receipt of the notice to raise additional points. *Id.* at 852.

¶16. The United States Court of Appeals for the Fifth Circuit strongly criticized the *Killingsworth* procedure in *Hughes v. Booker*, 220 F.3d 346 (5th Cir. 2000). In that case Hughes's counsel filed a *Killingsworth* brief and Hughes failed to file a supplemental brief. *Id.* The Fifth Circuit found that the *Killingsworth* procedure failed to provide sufficient safeguards to protect a defendant's right to appellate counsel. *Id.* at 352.

¶17. In response to *Hughes*, we have overruled the *Killingsworth* procedure and substituted the following procedure:

Appellate counsel must:

(1) determine that the defendant is unlikely to prevail on appeal;

(2) file a brief indicating that he scoured the record thoroughly, and referring to anything in the record that might arguably support the appeal; and

(3) advise client of his right to file a pro se supplemental brief.

The appellate court shall then make its own independent review of the record, in the manner followed in all other cases.

*Turner v. State*, 2001 WL 624974, at *2 (Miss. Jun. 7, 2001). *See also Overstreet v. State*, 787 So. 2d 1249, 1255 (Miss. 2001).

¶18. We find the procedure was generally followed in Brown's case. Appellate counsel did state in his opinion he was unlikely to succeed, assign one issue that might arguably support an appeal, and advise Brown of his right to file a supplemental brief. Brown did in fact file such brief assigning two additional issues. What is missing is any type of express statement that counsel "scoured" the record for anything that might support and appeal. Nevertheless, we have conducted an independent review of the record, and we cannot say there are any additional issues that might support an appeal.

## CONCLUSION

¶19. Because sufficient evidence existed to support the verdict of guilty and because the verdict was not against the overwhelming weight of the evidence, we affirm the judgment of the Scott County Circuit Court.

¶20. **CONVICTION OF BURGLARY AND SENTENCE OF SEVEN YEARS IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, DIAZ AND EASLEY, JJ., CONCUR. CARLSON AND GRAVES, JJ., NOT PARTICIPATING.**

1. Section 97-17-33(1) states in pertinent part:

Every person who shall be convicted of breaking and entering, in the day or night, any shop, . . . in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony . . . shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.