878 So.2d 207 (2004)
Jerrod Ashton BROOMFIELD and Marquise Leon Flewellen, Appellants,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00421-COA.
Court of Appeals of Mississippi.
February 24, 2004.
Certiorari Denied July 22, 2004.
*210 Glenn F. Rishel, James F. Thompson, Harry B. Ward, Bay St. Louis, attorneys for appellant.
Office of the Attorney General by Deirdre McCrory, attorneys for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
GRIFFIS, J., for the Court.
¶ 1. The Appellants' motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted.
¶ 2. Marquise Leon Flewellen, Jerrod Ashton Broomfield and Douglas Ricardo Moody were charged with armed robbery and were tried as co-defendants in the Circuit Court of the First Judicial District of Harrison County. The jury convicted Broomfield and Flewellen, but was unable to reach a verdict on the charges against Moody. The post-trial motions were denied. Broomfield and Flewellen appeal. We find no error and affirm.

*211 FACTS
¶ 3. On June 21, 2001, April Jones and Kelly Sullivan were employed as a flight attendant and pilot, respectively, by Atlantic Southeast Airlines. Late that evening, they had completed a flight and were lodging overnight at the Crystal Inn in Gulfport, Mississippi. Jones and Sullivan were in a room watching a movie when a man broke into the room wielding a gun and repeatedly screaming obscenities and instructing them to be quiet. The intruder shoved Sullivan down in her chair and hit Jones a couple of times in the back of the head. During the struggle, two other men entered the room and forced Sullivan to the floor. One man yelled, "grab the duct tape, duct tape their eyes, duct tape their mouth." As a result of the continuous screams and the fierce resistance encountered, one of the intruders urged the others to leave. They then left the room. Jones and Sullivan were transported to the hospital for their injuries.
¶ 4. At trial, Jones testified to the above events, and Sullivan corroborated her testimony. Both Jones and Sullivan identified Broomfield and Flewellen as the men who had entered their hotel room that night. There was no direct evidence presented to establish that property had been stolen. However, Jones's watch, which she was wearing when the men entered the room, was found on the floor, on the opposite side of the room from where she had been standing. Jones testified that she did not take her watch off or go to the other side of the room.
¶ 5. Sergeant John Massengill of the Harrison County Sheriff's Department was dispatched to the Crystal Inn. Sergeant Massengill interviewed Jones and Sullivan and then transmitted the suspects' descriptions to other officers. Sergeant Massengill, along with other investigators, discovered a piece of duct tape in the room and a piece of what appeared to be a latex glove in a nearby hotel stairwell.
¶ 6. Deputy Tim Huguet testified that, while on patrol that night, he attempted to initiate a traffic stop for speeding. The vehicle did not stop. Deputy Huguet pursued the vehicle in a high speed chase until the driver lost control and ran the vehicle off the road. Deputy Huguet testified that there were three individuals in the vehicle. When he approached the vehicle, he saw that one of the individuals had a gun. The occupants quickly fled. After a short chase, all three suspects were placed in custody. Deputy Huguet further testified that from a plain view observation he noticed a roll of duct tape and used latex gloves in the vehicle. The deputy identified Flewellen as the driver.
¶ 7. Officer Vincent Sipriano of the Gulfport Police Department was also on patrol that evening and assisted Deputy Huguet in the pursuit. Officer Sipriano corroborated Deputy Huguet's testimony and testified that he gave chase to and arrested Broomfield.
¶ 8. Melissa Schoene, a forensic scientist, testified that there was a physical match between the piece of duct tape taken from the hotel room and the roll of duct tape that was found in Flewellen's vehicle.
¶ 9. The jury found Broomfield and Flewellen guilty of armed robbery. Broomfield was sentenced to thirty-five years, and Flewellen was sentenced to forty years in the custody of the Mississippi Department of Corrections.

LEGAL ANALYSIS

1. Whether the evidence was sufficient to support the element of "attempt to take."
¶ 10. Broomfield and Flewellen argue that the proof was insufficient to establish that they possessed the requisite intent to *212 commit a robbery because there was no direct evidence that they demanded or took any items. In short, they contend that since nothing was taken then the prosecution failed to prove that they had the "intent" to take, which is required to establish the element of "attempt to take."
¶ 11. Our standard of review on the question of the legal sufficiency of the evidence is clearly defined. In Manning v. State, 735 So.2d 323, 333(¶ 10) (Miss.1999), the Mississippi Supreme Court held:
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence  not just that supporting the case for the prosecution  in the light most consistent with the verdict. We give [the] prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
¶ 12. Our consideration begins with a review of two statutes. First, the armed robbery statute, Mississippi Code Annotated Section 97-3-79 (Rev.2000), provides in pertinent part:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery....
Second, the attempt to commit an offense statute, Mississippi Code Annotated Section 97-1-7 (Rev.2000), provides in pertinent part:
Every person who shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, shall, where no provision is made by law for the punishment of such offense, be punished.... for an amount not greater than is prescribed for the actual commission of the offense so attempted.
¶ 13. Broomfield and Flewellen were charged and convicted of armed robbery. However, they did not complete the mission they embarked upon when they entered the hotel room that night. Mississippi Code Annotated Section 97-3-79 (Rev.2000) provides that a person may be convicted of armed robbery if an attempt is made. Mississippi Code Annotated Section 97-1-7 (Rev.2000) contemplates a crime for attempt to commit any offense if the person makes any overt act toward the commission of the crime, but for whatever reason he fails to complete the necessary acts. These statutes establish the requisite elements that the State must prove to obtain a conviction of armed robbery.
¶ 14. For Broomfield and Flewellen to be guilty of armed robbery, the State must prove that (1) Broomfield and Flewellen attempted to take from the presence and against the will of Jones and Sullivan money or personal property, (2) by violence or by putting Jones and Sullivan in fear of immediate injury by the exhibition of a deadly weapon, and (3) Flewellen and *213 Broomfield committed some overt act toward the commission of the crime. The jury determined that the State proved each of these elements, beyond a reasonable doubt, and found Broomfield and Flewellen guilty.
¶ 15. In this appeal, the second and third listed elements are not at issue. The evidence that Broomfield and Flewellen entered the hotel room uninvited, brandishing a firearm, and screaming for the inhabitants to be quiet was sufficient to establish that violence was used and that Jones and Sullivan were placed in fear of immediate injury by the exhibition of a deadly weapon. Likewise, these same acts clearly establish that Flewellen and Broomfield committed an overt act toward the commission of the crime.
¶ 16. Our review turns to whether Broomfield and Flewellen attempted to take money or property from the presence and against the will of Jones and Sullivan. Our guiding principle is that the jury is the sole judge of the weight and worth of testimony. Brown v. State, 726 So.2d 248, 250(¶ 8) (Miss.Ct.App.1998). The jury may draw any reasonable inferences from the evidence. Tolbert v. State, 407 So.2d 815, 820 (Miss.1981). We look to the evidence that was considered by the jury and to what inferences could have been drawn by the jury to find the "intent" necessary to satisfy the "attempt to take" element of armed robbery.
¶ 17. Had Broomfield and Flewellen not aborted their mission that night, their intent would have been known by their direct actions. However, this does not mean that the crime of attempted armed robbery was not committed. It is for the jury to determine whether they possessed the required "intent to take."
¶ 18. In Perry v. State, 435 So.2d 680 (Miss.1983), two men entered a savings and loan. One man approached a teller at the counter and pulled a gun while the second approached the branch manager at her desk. The first man then approached the lounge area, grabbed another employee and forced her and another female employee to stand against the wall, telling them not to move. The men then scuffled with the first two women by the counter. One of the tellers attempted to activate an alarm. Simultaneously, a buzzer signaled that a customer was at the drive-in window. The men fled apparently believing that the alarm had been set off. Both men were convicted of attempted armed robbery.
¶ 19. The appellants argued that the State failed to prove a specific intent to take, since the evidence only showed that appellants entered the building and pointed a gun at an employee while his partner assaulted the other employees. The appellants further asserted that since there was no demand for money their actions could indicate the probability of other offenses such as kidnaping, rape, or murder, rather than robbery. The supreme court rejected this argument as frivolous and held that "the specific intent to rob was shown in the present case overwhelmingly by all of the facts and the inferences."
¶ 20. The difference between Perry and this case is that the actions took place in a bank instead of a hotel room. Nevertheless, the evidence of the manner of entry was identical, i.e., the appellants entered with a weapon and assaulted the women, no demand for money or personal property was ever made, and that their plan was abandoned.
¶ 21. Our courts have also considered a number of cases where the "intent" necessary to prove an "attempt to steal" element of burglary and robbery was considered. See Crawford v. State, 839 So.2d 594, 595(¶ 5) (Miss.Ct.App.2003); Brown v. *214 State, 799 So.2d 870, 872(¶ 8) (Miss.2001); Perry v. State, 435 So.2d 680, 681 (Miss.1983); Williams v. State, 317 So.2d 425, 427 (Miss.1975); Newburn v. State, 205 So.2d 260, 265 (Miss.1967); Thames v. State, 221 Miss. 573, 577, 73 So.2d 134, 136 (1954); Nichols v. State, 207 Miss. 291, 296, 42 So.2d 201, 202 (1949). Although these were burglary and not armed robbery convictions, the point is the same. The courts considered whether the intruder's conduct could support an inference that the intruder had a larcenous intent. Therefore, we have no difficulty in holding that the larcenous intent could be inferred here, to sustain a conviction for armed robbery.
¶ 22. Recently, the Mississippi Court of Appeals unanimously held that an "inference of the intent to steal may arise from proof of the breaking and entering." Crawford v. State, 839 So.2d 594, 595(¶ 6) (Miss.Ct.App.2003) (citing Gillum v. State, 468 So.2d 856, 859 (Miss.1985)). We reasoned that:
Since those committing burglary usually have no occasion to announce their intentions, evidence of the required intent usually arises only from inferences.
Some presumptions are to be indulged in against one who enters a building unbidden at a late hour of night, else the burglar caught without booty might escape the penalties of the law. People are not accustomed in the nighttime to enter homes of others, when asleep, with innocent purposes. The usual object is theft; and this is the inference ordinarily to be drawn in the absence of explanation from breaking and entering at night accompanied by flight when discovered, even though nothing has been taken.

Crawford, 839 So.2d at 595(¶ 5) (quoting Brown v. State, 799 So.2d 870, 872(¶ 8) (Miss.2001); Nichols v. State, 207 Miss. 291, 296-97, 42 So.2d 201, 202 (1949)) (emphasis added). This language and the facts in Crawford describe the situation we encounter here.
¶ 23. Paul Crawford entered the home of Patrick Hamlin and Hamlin's mother without permission while Patrick was away. Crawford, 839 So.2d at 595(¶ 2). Patrick returned home to his mother and noticed Crawford in the house. Crawford then quickly exited the front door. Id. Crawford argued that there was no evidence that any items of value had yet been taken or even disturbed. Id. at (¶ 4). Crawford was convicted of burglary. Id. at (¶ 1). On appeal, Crawford argued that the evidence failed to demonstrate any proof of his intent to steal. This Court found that the absence of direct evidence was not fatal on this issue. Indeed, in a unanimous decision, this Court concluded that "an inference of the intent to steal may arise from proof of breaking and entering." Id. at (¶ 6). Here, just as in Crawford, an inference of the intent to take or steal may arise from the evidence of Flewellen's and Broomfield's unlawful entry.
¶ 24. The supreme court has held that "the State seldom has direct and positive testimony expressly showing the specific intent of an intruder at the time he unlawfully breaks into a dwelling house; however, such testimony is not essential to establish the intent to commit a crime." Newburn v. State, 205 So.2d 260, 265 (Miss.1967). In Newburn, the court concluded that "[i]ntent is an emotional operation of the mind, and is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. Defendant's intention is manifested largely by the things he does." Id.
¶ 25. We must examine the evidence and the inferences that the jury *215 could have reasonably drawn. Broomfield and Flewellen were identified as the two men who broke into the hotel room uninvited that night. They had a gun and assaulted one of the victims with the gun. Upon their entry, they repeatedly screamed obscenities and instructed the victims to be quiet. One of the intruders shoved Sullivan down in her chair and hit Jones a couple of times in the back of the head. During the struggle, two other men entered the room and forced Sullivan to the floor. One man yelled, "grab the duct tape, duct tape their eyes, duct tape their mouth."
¶ 26. The entire encounter was brief. Clearly, Broomfield and Flewellen did not complete what they had planned and had in store for Jones and Sullivan. Broomfield and Flewellen aborted their plans because they encountered continuous screams and unexpected resistance. One of the intruders urged the others to leave. They then abruptly left the room, abandoning their plans.
¶ 27. The jury considered the evidence of the unlawful entry. The jury considered the fact that Broomfield and Flewellen were unexpectedly met with loud screams and resistance by their victims. Broomfield and Flewellen fled the room as quickly as they entered. Jones testified that Broomfield and Flewellen did not announce their intentions but that they clearly had an unlawful purpose.
¶ 28. Sullivan was asked whether any of the men said anything about taking any property. She testified, "I didn't give them time to say anything. As soon as he walked in with the gun and I saw it pointed at my head, I started fighting. I didn't want it pointed at my head anymore."
¶ 29. There was also testimony about Jones's watch. Jones testified that, prior to the assailants' entry, she had her watch on her wrist. The watch was not on her wrist after the incident. Instead, it was found on the floor on the opposite side of the room from where Jones was standing. Jones confirmed that she did not take the watch off. It was reasonable for the jury to infer that the watch could have come off during the struggle. It was likewise reasonable for the jury to infer that one of the assailants removed the watch with the intent to take it from the room.
¶ 30. Flewellen's and Broomfield's actions in the hotel room went beyond mere preparation and were clearly sufficient overt acts to support the conviction of attempted armed robbery. The jury was free to infer that the plan to commit armed robbery was spoiled when they encountered continuous screams and unexpected resistance. Likewise, the jury was also free to infer that there was an attempt to take the watch or other personal property. The specific intent to rob was shown by all of the facts and the reasonable inferences drawn therefrom. It was within the jury's province to draw reasonable inferences from the evidence based on their experience and common sense. Lewis v. State, 573 So.2d 719, 723 (Miss.1990). A jury's finding of fact is not to be overturned when there is credible evidence in the record from which the jury could have reasonably inferred the offense. Bailey v. State, 785 So.2d 1071, 1075(¶ 13) (Miss.2001).
¶ 31. The dissent unfortunately attempts to support its position by questioning and attacking the motive of the majority's conclusion. Nothing could be further from the truth. Our system of justice allows the jury to make logical and reasonable inferences and presumptions. We can be certain that Broomfield and Flewellen did not enter the hotel room that night to commit the Lindbergh kidnaping, as flippantly suggested by the dissent. The dissent prefers to substitute its judgment for *216 that of the jury. We do not. Based on the standard of review set forth in Manning v. State, 735 So.2d 323, 333(¶ 10) (Miss.1999), we do not have the authority here to disturb the jury's verdict.
¶ 32. The jury's task was to determine the intent of Broomfield and Flewellen and to decide whether they committed the crime of armed robbery. Their intent was a matter that could be inferred from the circumstances. Brown v. State, 799 So.2d 870, 872(¶ 8) (Miss.2001). The issue of intent is a factual determination and is within the exclusive province of the jury, under appropriate instructions from the court. Williams v. State, 317 So.2d 425, 427 (Miss.1975). Here, considering all of the circumstances, it was a logical inference or presumption for the jury to find that Broomfield and Flewellen had the intent, and indeed attempted, to "take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon," as required under Mississippi Code Annotated Section 97-3-79 (Rev.2000) to establish the crime of armed robbery.
¶ 33. We find that the evidence was sufficient for the jury to find Broomfield and Flewellen guilty of armed robbery. Thus, we find that this assignment of error is without merit.

2. Whether the verdict is against the overwhelming weight of the evidence.
¶ 34. Flewellen asserts that the verdict was against the overwhelming weight of the evidence. The standard of review we must use is as follows:
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.
Baker v. State, 802 So.2d 77, 81(¶ 14) (Miss.2001) (quoting Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998)).
¶ 35. At trial, the defense presented no credible evidence tending to demonstrate the innocence of Broomfield and Flewellen nor a reasonable explanation for their actions. The jury heard the testimony of several State witnesses that implicated Broomfield and Flewellen. Both Broomfield and Flewellen were identified as the men who entered the hotel room that night. Flewellen was identified as the man who "had the gun," and Broomfield was identified as the man who had a glove. The forensic scientist testified that the piece of duct tape found in the hotel room matched the roll of duct tape found in the suspect's vehicle. Latex gloves were also discovered in the vehicle. In summary, the testimony concerning the manner in which the defendants entered the room, their subsequent conduct, the fact that they fled and resisted arrest, and that a reasonably supported inference existed that there was an attempt to take Jones's watch all sustain a finding by a reasonable minded jury that Broomfield and Flewellen committed armed robbery.
¶ 36. Accepting as true all evidence favorable to the State, this Court is compelled to conclude that the evidence was of such weight to support the jury's findings. *217 We do not find that the evidence in favor of the defendants was overwhelmingly contrary to the verdict. Therefore, we find this assignment of error to be without merit.

3. Whether the trial court erred in admitting a redacted version of Broomfield's statement.
¶ 37. Broomfield and Flewellen assert that the court erred in admitting a redacted version of a statement Broomfield made to Deputy Huguet. Outside the presence of the jury, Deputy Huguet testified that he asked Broomfield "what happened at the Crystal Inn." Broomfield replied, "I stayed in the car, the other two went in." The court determined that the statement was not admissible in its entirety. The court ordered Deputy Huguet not to refer to any others. In the jury's presence, Deputy Huguet responded to the question that Broomfield replied that "he stayed in the car." The court then instructed the jury that the statement was not to be considered as evidence of guilt against Flewellen and Moody and that no inference of guilt of the co-defendants was to be drawn therefrom. Broomfield now asserts that the admission of his own redacted statement violated his co-defendants' right to cross-examine witnesses.
¶ 38. Broomfield has no right or standing to assert this as error. First, the right to cross-examination may not be vicariously asserted. Ware v. State, 410 So.2d 1330,1331 (Miss.1982). Second, Broomfield has cited no authority to assert these constitutional rights vicariously. "Issues not properly briefed and supported by logical argument and, where appropriate, citation to relevant authority, will not normally be considered." Hoops v. State, 681 So.2d 521, 535 (Miss.1996). Finding either of these reasons sufficient to disregard this alleged error, we decline Broomfield's request for relief on this basis.
¶ 39. We next address Flewellen's argument that the admission of Broomfield's statement violated his constitutional right to cross-examine witnesses. The Confrontation Clause of the Sixth Amendment of the United States Constitution, extended to the states by the Fourteenth Amendment, guarantees the right of a criminal defendant "to be confronted with the witnesses against him." The right of confrontation includes the right to cross-examine witnesses. Richardson v. Marsh, 481 U.S. 200, 207, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).
¶ 40. In overruling Flewellen's objection, the trial judge determined that Richardson controlled. In Richardson, the co-defendant's testimony was not incriminating on its face, and became so only when linked with evidence introduced later at trial. The United States Supreme Court held "that the confrontation clause is not violated by the admission of a nontestifying co-defendant's confession with a proper limiting instruction when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Id. at 211, 107 S.Ct. 1702.
¶ 41. Generally, to avoid violating the defendant's right to confront witnesses against him, out-of-court statements by a co-defendant which incriminate the defendant should not be admitted into evidence during the State's case-in-chief since it cannot be known whether the co-defendant will testify, and be subject to cross-examination. Smith v. State, 754 So.2d 1159, 1162(¶ 8) (Miss.2000). This principle was established by the United States Supreme Court in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In Bruton, the co-defendant's confession "expressly implicat[ed] the defendant as *218 his accomplice," and the Supreme Court held that the Confrontation Clause of the Sixth Amendment is violated when a co-defendant's incriminating statement is introduced at a joint trial, even if the jury is instructed to consider the statement only against the person who made it. Id. at 126, 88 S.Ct. 1620. The court held "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Id. at 135, 88 S.Ct. 1620. The court recognized a defendant's natural "motivation to shift blame onto others" and found that accusations between co-defendants are "inevitably suspect." Id. According to the court, "[t]he unreliability of such evidence is intolerably compounded when the alleged accomplice ... does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed." Id. Therefore, Bruton requires the trial judge to answer the question of whether a particular confession is or is not "powerfully incriminating" on a case-by-case basis. Richardson, 481 U.S. at 215, 107 S.Ct. 1702.
¶ 42. In this case, the trial judge determined that the testimony was not "powerfully incriminating." Indeed, Broomfield's statement neither directly mentioned Flewellen nor implicated Flewellen in any criminal activity. The statement was not incriminating on its face, as required by Bruton."Where the co-defendant's statements do not facially implicate the defendant in the crime, there is no Bruton error." Richardson, 481 U.S. at 208-09, 107 S.Ct. 1702.
¶ 43. We find that Flewellen's Sixth Amendment right of confrontation was not violated by the admission of Bloomfield's redacted statement. The record reflects that all references to Flewellen were omitted, as required by Richardson. See Strahan v. State, 729 So.2d 800, 804(¶ 14) (Miss.1998) (clearly not a violation of defendant's confrontation rights to conduct a joint trial and admit co-defendant's statement where all references to co-defendant were deleted). Therefore, we find that this assignment of error is without merit.

4. Whether the trial court erred in admitting Flewellen's wallet into evidence.
¶ 44. The State attempted to introduce Flewellen's wallet into evidence. The defense immediately objected. The wallet was found in the car Flewellen was driving. The wallet was found in an inventory search, pursuant to routine police procedure. The wallet contained a swipe card, similar to cards that are regularly used to gain access to hotel rooms. The State did not present evidence that the swipe card was in fact used to gain entry into the hotel room. Therefore, the defense claimed that the wallet was inadmissible because there was no evidence offered to show that the swipe card was used in the commission of the crime. Overruling Flewellen's objection, the court found that the wallet and its contents were relevant because it was found "inside the car that was chased and from which the defendant's fled."
¶ 45. The trial judge has the discretion to consider and decide what evidence is admissible, and unless this judicial discretion is so abused as to be prejudicial to the accused, then the ruling of the lower court must be affirmed. Robinson v. State, 758 So.2d 480, 488(¶ 31) (Miss.Ct.App.2000). In Townsend v. State, 681 So.2d 497, 507 (Miss.1996), the Mississippi Supreme Court held:
articles such as tools and weapons found near the place or scene of crime or near *219 the place where the defendant was arrested, have been admitted in evidence. (citation omitted). This is true even where it is not claimed nor proved that they were used in the commission of the alleged crime in cases where the evidence has probative weight, or where they constitute a part of the surrounding scene or picture....
¶ 46. We find that the trial court did not abuse its discretion in admitting the wallet and its contents because it was found in Flewellen's car. The evidence connected Flewellen with the crime and constituted part of the surrounding scene. Furthermore, items seized in an inventory search of the vehicle pursuant to routine police procedure are admissible. Robinson v. State, 418 So.2d 749, 752 (Miss.1982). Therefore, the trial judge did not abuse his discretion, and this assignment of error is without merit.

5. Whether the trial court erred in overruling Flewellen's motions for mistrial.
¶ 47. Flewellen contends that the trial court erred in overruling his motions for mistrial on three grounds: (1) a juror possibly saw him in the holding cell during the lunch break; (2) Bloomfield's reply, that "he sat in the car" was prejudicial; and (3) Officer Sipriano's statement about there being a report of an armed robbery was improper and tainted the jury. The disposition of a motion for mistrial is within the sound discretion of the trial court, whose ruling will not be disturbed absent a showing of abuse of that discretion. Crawford v. State, 787 So.2d 1236, 1244(¶ 31) (Miss.2001).
¶ 48. On the first ground cited, Flewellen never actually moved for a mistrial. Flewellen's counsel mentioned it to the judge after the jury was excused for the day. The judge stated that he could bring it up the next morning. However, Flewellen's counsel failed to bring the matter to the court's attention the next morning, and it was not made on the record. Therefore, we find that the claim was abandoned, and the trial court did all that was requested of it. Wetz v. State, 503 So.2d 803, 810 (Miss.1987). Furthermore, the failure to pursue this issue at trial leaves the record devoid of any proof that any juror actually saw Flewellen in the holding cell. The court never had an opportunity to question the juror(s) to determine if it occurred or resulted in any prejudice to Flewellen.
¶ 49. Next, we previously addressed the admission of Bloomfield's redacted statement. Because we find it not to be error, this ground is not sufficient to support a mistrial.
¶ 50. We now address Flewellen's third ground in this assignment of error. During the direct-examination of Officer Sipriano, after being asked what he did with Bloomfield once he was in custody, the officer testified:
[a]t that point Officer Huguet had returned to where we had this individual at Imilda and Klein, and a Harrison County unit had pulled up and had let us know that they had an armed robbery at the Crystal Inn on Canal Road and that they just had an armed robbery and that this could possibly be the suspect from the armed robbery.
¶ 51. Flewellen's counsel objected, and the objection was sustained. Flewellen's counsel later moved for a mistrial stating that there had been nothing provided to the defense in discovery about this armed robbery report. The trial court ruled that it "disagree[s] with your characterization that is a discovery violation. It is a basis for cross-examination. You were given *220 that opportunity and that motion for mistrial is denied."
¶ 52. Flewellen has failed to show how he was prejudiced. Therefore, he has not demonstrated that the court has abused its discretion in overruling his motion for mistrial. See Alexander v. State, 759 So.2d 411, 419 (¶¶ 26-28) (Miss.2000) (a presumption of correctness exists in rulings and remedies of the trial court and appellant has the burden of demonstrating reversible error). Therefore, we find that the trial judge did not abuse his discretion in denying the motions for mistrial and that this assignment of error is without merit.

6. Whether the trial court erred in failing to grant a severance sua sponte.
¶ 53. Flewellen argues that the trial court erred in not granting him a severance. Flewellen bases his argument on Bloomfield's reply to Deputy Huguet's question, that "[Bloomfield] sat in the car."
¶ 54. "The decision whether to grant a severance depends on whether the severance is necessary to promote a fair determination of the defendant's guilt or innocence." Collins v. State, 817 So.2d 644, 659(¶ 50) (Miss.Ct.App.2002). The decision to grant a severance is within the discretion of the trial court. URCCC 9.03. Unless one can show actual prejudice, a trial court cannot be found to have abused its discretion. Collins, 817 So.2d at 651(¶ 50).
¶ 55. We note that Flewellen was made aware of Bloomfield's statement prior to trial through discovery, but did not move for a severance before trial. As to the merits of this argument, Bloomfield's statement that "he sat in the car," did not even mention Flewellen or implicate Flewellen in any criminal activity. Further, there does not appear to be any conflict of interest between Bloomfield and Flewellen. Neither put on any type of defense. The evidence introduced at trial supported the guilt of both defendants. It is not error to deny a severance where the evidence goes to the guilt of both defendants. Blanks v. State, 451 So.2d 775, 777 (Miss.1984). There is no evidence to indicate an abuse of discretion by the trial court. This issue is without merit.

7. Whether the jury was instructed improperly.
¶ 56. Flewellen first asserts that the "jury was instructed improperly with regard to a lesser included offense." The State submits that Flewellen did not submit any such charge, nor did he object to the form-of-the-verdict instruction which authorized the jury to find him guilty of armed robbery or not guilty. Failure to request an instruction at trial waives an assertion of error on appeal. Materials Transp. Co. v. Newman, 656 So.2d 1199, 1203 (Miss.1995); see Russell v. State, 607 So.2d 1107, 1117 (Miss.1992) (failure to object constitutes a waiver of the issue for appeal). Flewellen did not ask for the jury to be instructed on a lesser offense. Therefore, the jury was properly instructed. This argument is without merit.
¶ 57. Flewellen next contends that the trial court committed reversible error in granting instruction C-5-A, which charged the jury that "the statement made by Bloomfield to Huguet may not be considered as evidence of guilt against the defendants... Flewellen and ... Moody. And, no inference of guilt of... Flewellen and ... Moody may be drawn therefrom." At the time this instruction was tendered, Flewellen did not make a contemporaneous objection. An issue is waived on appeal where there was no contemporaneous objection. Russell v. State, 607 So.2d *221 1107, 1117 (Miss.1992). Accordingly, we will not address this issue.
¶ 58. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCES OF THIRTY-FIVE YEARS FOR JERROD BROOMFIELD AND FORTY YEARS FOR MARQUISE FLEWELLEN IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., MYERS AND CHANDLER, JJ., CONCUR. LEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES AND THOMAS, JJ. KING, P.J., AND IRVING, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.
LEE, J., dissenting:
¶ 59. The majority modifies the language of the original opinion, but not the result. Therefore, I re-affirm and repeat my original dissent in its entirety.
¶ 60. There is little doubt that a horrible crime was committed and that the victims were placed in extreme fear for their lives. Further, there is little doubt that the defendants committed a crime. The point upon which I strongly disagree with the majority is that the defendants, although clearly guilty of violent acts, were not guilty of the crime of armed robbery for which they were ultimately charged and convicted. Accordingly, I find that we have no recourse except to reverse and render.
¶ 61. The majority cites the statute pertaining to armed robbery:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery....
Miss.Code Ann. § 97-3-9 (Rev.2000). As evidence that the elements of armed robbery were proven, the majority claims that the appellants attempted to take one of the victim's watch, and such intent to steal could be inferred from the circumstances. I look to the transcript and find such inference is not logical. On direct examination, one of the victims, April Jones, responded:
PROSECUTOR: Let me show you what's been marked as State's Exhibit 4 for identification. Do you recognize that?
JONES: Yes.
PROSECUTOR: What is that?
JONES: That's my watch.
PROSECUTOR: And is that the watch you were wearing the night of this incident?
JONES: Yes.
PROSECUTOR: All right. And did you have it on when the men came in the room?
JONES: Yes.
PROSECUTOR: How did it get on the floor?
JONES: I think during the struggle and the fight it must have came off.
DEFENSE COUNSEL: Your honor, we object to what she thinks.
COURT: Overruled. She can answer if he [sic] she knows.
PROSECUTOR: Did you take it off and put it there?
JONES: No.

*222 PROSECUTOR: Did one of the men take it off?
JONES: Not like undo it, but I mean, it could have broken whenever he grabbed my arms in the fight and struggle.
DEFENSE COUNSEL: We object to it could have broken.
COURT: Sustained.
PROSECUTOR: You don't know how it got off, but you didn't take it off?
JONES: Right.
¶ 62. Later in her testimony, Jones referred to her statement the night of the incident to the police. In her statement, she recalled a struggle in which one of the men grabbed both of her arms, remembered that none of the men ever commented that they were attempting to rob the women, and noted that the men bypassed in plain view personal items on the sink, including her cell phone and wallet.
¶ 63. The majority cites the rule that the jury may draw any reasonable inferences from the evidence. Tolbert v. State, 407 So.2d 815, 820 (Miss.1981). I find that the inference of guilt of the crime of armed robbery is not reasonable given the evidence presented. The armed robbery statute mandates that one guilty of such crime must have taken or attempted to take personal property from the person or her presence by violence or use of fear. Here, there is no question that the men attempted to instill fear in the women, nor is there question that the men's motives were certainly criminal in nature. What has not been proven is that there was a taking or an attempt to take property. The fact that a watch was on one woman's arm at the entrance of the men coupled with the fact that the watch was on the floor after the men left in no way can be stretched to meet the element of taking or attempt to have taken. The judge should have granted the requested motion for directed verdict or, post-trial, should have granted the motion for judgment notwithstanding the verdict.
¶ 64. There can be no doubt that this was a horribly traumatic and terrifying event for these victims. Further, there can be little, if any, doubt that the defendants were guilty of violent acts for which they accordingly should be punished. Where serious doubt exists, however, is in the issue of whether the defendants committed armed robbery. The majority goes to great lengths in its effort to affirm the conviction, claiming that at the beginning of the melee one of the victims testified that she was wearing a watch and afterward she found it on the floor.
¶ 65. The majority cites numerous cases to make its point, but misses. Did these defendants commit a crime? Yes. Was it armed robbery? Certainly not. These men might as well have been charged with the Lindbergh kidnaping, for they are just as guilty of this ancient crime as they are of having committed armed robbery. Under the majority's reasoning, they could have just as easily been guilty of attempted rape. After all, these were two females in a motel room and would that have not been the logical motive of the intruders? They had duct tape so surely they intended on taking them as hostages, and they should have been convicted of this.
¶ 66. While I recognize that it is politically correct to affirm a conviction, especially in a case such as this where an apparent crime did take place, we must hold to the principle that we are a nation of laws and not men. Under our system of justice, one cannot arbitrarily be charged with crimes he or she does not commit. If this happens, we can count ourselves as no better than a dictatorship  declining to *223 follow laws and leaving justice to the mercy of those in power. Therefore, I dissent.
BRIDGES AND THOMAS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.