# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-KA-00812-SCT

*LENNON THOMAS a/k/a LENNON LAMAR THOMAS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/17/2017 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| TRIAL COURT ATTORNEYS: | PATRICIA A. THOMAS BURCHELL |
| | DECARLO CHAS HOOD |
| | JAMES LEWIS LANE, JR. |
| | ANDRES FRANCISCO WALLACE |
| | LINDSAY ELIZABETH SLAWSON |
| | BENJAMIN DODD THORNTON |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: ERIN ELIZABETH BRIGGS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/17/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., MAXWELL AND BEAM, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. Lennon Thomas entered a small Hattiesburg, Mississippi convenience store with a

bandana covering his face and carrying a gun. Once inside, he ran behind the cashier's

counter where the cashier—who had just returned from the bank—was stooped down handling thousands of dollars. The cashier's husband had seen Thomas enter the store and yelled to warn his wife. He also pulled out his own gun in defense. Thomas grabbed the cashier by her neck and stuck his pistol to her head. She pleaded for her life. When her husband ran from the store to seek help, Thomas shot him in the back, dropping him on the concrete parking lot. Thomas then stuck his pistol in the cashier's back and shot her too before fleeing the store.

¶2. Thomas was quickly captured by police officers in the nearby woods. He was arrested and later convicted of attempted armed robbery and two counts of aggravated assault. Thomas now appeals, claiming that because no money was taken from the store, the State failed to prove he had attempted to commit an armed robbery. We disagree.

¶3. A defendant's intent to commit a crime is a jury question and may be determined from the defendant's acts and conduct.[1] Inferences of guilt may also be deduced from the surrounding circumstances and facts.[2] Overwhelming evidence was presented from which a jury could reasonably infer the masked and armed Thomas had attempted to rob the store but was foiled by the cashier's armed husband. We thus affirm Thomas's armed-robbery conviction.

**Background Facts and Procedural History**

¶4. Nga Tran and her husband Truc own Discount Tobacco and Beer in Hattiesburg,

---

[1] *See* **Hughes v. State**, 983 So. 2d 270, 278-79 (Miss. 2008).

[2] *See* **Ryals v. State**, 305 So. 2d 354, 356 (Miss. 1974).

Mississippi. Part of their business includes check cashing for store customers. On the morning of December 15, 2014, Nga had just returned to the store from depositing customer checks at the bank. She was placing a bank bag and $80,000 in cash under the counter when Thomas entered the store and ran behind the counter. Thomas was wearing dark clothing, gloves, and had a bandana covering his face. He was also carrying a pistol in his hand. Truc was at the opposite end of the store stocking a beer cooler. Truc saw Thomas and yelled to Nga that someone was in the store with a gun. Truc pulled out his own pistol in defense.

¶5. When Nga stood up from handling the money, Thomas was behind the counter, face to face with her. He grabbed her neck and put his pistol to her head. Thomas yelled for Truc to "put the f---ing gun down" or he would "kill" Nga. As Thomas continued choking Nga, she begged him not to kill her and offered Thomas the store's money tray. At this point, Truc ran from store towards the nearby police department to seek help. Thomas followed, forcing Nga towards the door, while beating her in the head with his pistol. He then opened the store's front door and shot Truc in his back. After shooting Truc, Thomas turned his pistol on Nga and shot her in the back too. He then fled the store on foot.

¶6. The store is near the Hattiesburg Police Department, and several officers heard shots coming from its direction. Officer Chad Young was one of the first officers on the scene. He testified that he saw Thomas, wearing dark clothing, running behind the store. Officer Young pursued Thomas, who jumped in a drainage ditch while fleeing, getting his pants wet to the knees. Thomas then ran into the woods behind the store. The officers called for assistance and set up a perimeter around the woods. Soon after, Officers Jakki Varnado and

3

Harris Tapp saw a man wearing a white shirt and wet, muddy pants exit the woods. The suspect was taken into custody. Officer Young identified Thomas as the person he had pursued behind the store. Thomas was still wearing his dark, wet pants but had removed most of the clothing above his waist. Officer Tapp found several items of dark clothing not far from where Thomas had exited the woods. No gun was found, but DNA evidence linked the abandoned clothes in the woods to Thomas. While recovering in the hospital, Nga reviewed a photograph lineup and identified Thomas as the man who had shot her and Truc.[3] Nga later gave a written statement to police about the incident.

¶7.    A grand jury returned a three-count indictment against Thomas. Count I charged Thomas with armed robbery, and Counts II and III charged him with the aggravated assaults of Nga and Truc Tran. At the end of a two-day trial, the jury found Thomas guilty on all counts. Thomas filed a post-trial motion, which the trial court denied. Thomas now appeals to this Court.

**Discussion**

¶8.    Neither Thomas nor his appellate lawyer challenge either of his aggravated assault convictions, Counts II and III. His appellate counsel's sole complaint is about the sufficiency of the evidence supporting Thomas's armed-robbery conviction, Count I. And Thomas, who filed a pro se brief, argues that his armed-robbery sentence in Count I should run concurrent with—not consecutive to—his aggravated assault sentence in Count III.

¶9.    Both arguments lack merit. First, sufficient evidence was presented for the jury to

---

[3] Although Thomas was wearing a bandana over his mouth, Nga was able to identify him from his eyes and "frown line."

4

determine that Thomas had attempted to commit an armed robbery. And second, it is clear from the transcript and written sentencing order that the trial judge intended Thomas to serve his three sentences consecutively.

## I. Sufficiency of the Evidence

¶10. Thomas insists the State's evidence was insufficient to support his attempted armed-robbery conviction. As he sees it, the evidence, at most, showed he entered the store with the sole intent to violently assault the two owners and then leave.

¶11. When reviewing challenges to the sufficiency of the evidence, we view all evidence in the light most favorable to the State. *Cotton v. State*, 144 So. 3d 137, 142 (Miss. 2014) (citation and quotation marks omitted). We must affirm if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation and quotation marks omitted). Under this standard, "the [S]tate receives the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Hughes v. State*, 983 So. 2d 270, 276 (Miss. 2008) (citations omitted).

¶12. Because Thomas fled the store without taking any money, the State proceeded with an *attempted* armed-robbery theory. To prove attempted armed robbery, the State had to prove beyond a reasonable doubt that Thomas (1) intended to commit armed robbery, (2) made a direct but ineffectual act towards its commission, and (3) failed to consummate the crime. *Id.* at 278.[4]

---

[4] Mississippi law criminalizes an attempt to commit armed robbery through its armed-robbery statute:

Every person who shall feloniously take or *attempt* to take from the person or

5

¶13. Here, all three elements were met. Thomas's underlying intent was a fact question for the jury to decide. And this Court has held that intent may be proved from facts surrounding the case. *Id.* at 278-79. Indeed, a jury may infer guilty intent when considering the totality of the circumstances. *See **Ryals v. State***, 305 So. 2d 354, 356 (Miss. 1974). While Thomas strongly emphasizes the fact that no money was taken from the store, he concedes that a taking is not mandated to establish *attempted* armed robbery. *See* ***Broomfield v. State***, 878 So. 2d 207 (Miss. Ct. App. 2004). But he suggests his case differs from ***Broomfield***, because unlike that defendant—who illegally broke into the victim's hotel room—here, Thomas did not unlawfully enter the store. We find that distinction wholly immaterial, since an illegal breaking and entering is not a required element of armed robbery. Rather, it was just evidence of that particular defendant's underlying intent.

¶14. The bottom line is that in many cases, the State is not privy to direct evidence of intent because of the impossibility of peering inside a defendant's mind. And here, the first element—whether Thomas intended to commit an armed robbery—was "a question of fact to be gleaned by the jury . . . ." ***Shanklin v. State***, 290 So. 2d 625, 627 (Miss. 1974). In evaluating Thomas's underling intent, the jury was free to consider his acts coupled with the surrounding facts and circumstances. *Id.* And the facts showed that Nga had just returned from the bank with $80,000 in cash. Indeed, she was in the process of handling the money

<div style="margin-left:2em;">

from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery . . . .

</div>

Miss. Code Ann. § 97–3–79 (Rev. 2014) (emphasis added)

and bank bag when Thomas rushed toward her behind the counter with gloves on, his face masked, and a loaded pistol in hand. Viewing this evidence in the light most favorable to the State, it is sufficient to prove both Thomas's intent to rob the store and to meet the second required element—that Thomas made a direct, but ineffectual act toward committing the armed robbery. The third element of an attempted armed robbery requires proof that the defendant failed to consummate the crime. And here, the jury was also free to infer that Thomas's attempt to rob the store at gunpoint was frustrated by Truc's armed intervention and attempt to get help. Or as Nga put it, when Truc "ran out into the front door, and [Thomas is] shuffling me to the front door with him . . . he didn't get a chance to take anything."

¶15. Because all three elements of attempted robbery were met, this Court affirms Thomas's armed-robbery conviction.

**II. Sentencing**

¶16. Thomas does not claim any constitutional defects or errors of law in his armed-robbery sentence. Instead, in his pro se brief, he argues that the trial judge intended for the sentence in Count I, armed robbery, to run concurrent to the sentence in Count III, aggravated assault. But the record shows otherwise.

¶17. Determining whether multiple sentences run concurrently or consecutively is within the trial court's discretion. *See* Miss. Code Ann. § 99-19-21 (Rev. 2015); ***Hoops v. State***, 681 So. 2d 521, 537-38 (Miss. 1996). And here, the trial judge was clear both in his oral pronouncement and written sentencing order. He sentenced Thomas to twenty-five years for

Count I; twenty years for Count II, to run consecutive to Count I; and twenty years for Count III, to run consecutive to Count II. So all sentences were consecutive to one another.

¶18. These facts differ from *Shinn v. State*, which Thomas cites, where the trial judge was unclear about whether the sentences were concurrent or consecutive. *Shinn v. State*, 74 So. 3d 901 (Miss. Ct. App. 2011). In such instances, this Court construes ambiguities in favor of the defendant. *Anderson v. State*, 288 So. 2d 852, 855 (Miss. 1974). But here, the written order speaks for itself—Thomas's sentences are to be served consecutively, one after the other beginning with Count I. Thus, no ambiguity exists and no error occurred.

**Conclusion**

¶19. Whether Thomas intended to rob the store was a question of fact for the jury. And the jury reasonably inferred from the evidence that Thomas intended to commit armed robbery. Furthermore, the trial judge was clear that Thomas's sentences would be served consecutive to one another, not concurrent. We therefore affirm.

¶20. **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**