RUSSELL, J.,
for the Court:
¶ 1. Scott James Johnson appeals the burglary conviction he received in the Circuit Court of the First Judicial District of Harrison County, Mississippi, for which he was sentenced to serve seven years in the custody of the Mississippi Department of Corrections, with six years suspended and one year to serve. He asserts three issues on appeal: (1) whether the evidence was sufficient to sustain the conviction, (2) whether the verdict is contrary to the overwhelming weight of the evidence, and (8) whether there was extraneous prejudicial information or outside influence that was improperly brought to the jury’s attention. Upon review, we find no error. Therefore, we affirm Johnson’s burglary conviction and sentence.
FACTS AND PROCEDURAL HISTORY
¶ 2. At approximately 1:80 a.m. on June 14, 2009, Johnson was observed stumbling between houses by an eyewitness, James Clark, who was visiting a neighbor’s house at the time. Clark also observed Johnson crouch down in some bushes as a train passed by the neighborhood. Next, Clark saw Johnson cross the street and check the door of a sport-utility vehicle (“SUV”), which was locked. Thereafter, Clark stated that Johnson approached a red Chevrolet Silverado truck to check the door handle, and when it opened, Johnson entered the truck which had a boat trailer attached to it. Becoming suspicious, Clark dialed 911 and observed Johnson lean over inside the truck momentarily. Clark described Johnson as very unkept and disoriented.
¶ 3. Officer Clark Ladner (“Officer Lad-ner”) arrived on the scene in response to the 911 call made by Clark. Officer Lad-ner testified that he turned his headlights off as he approached the truck, which had a white boat attached to it, and he observed the taillights or headlights turn on and off. As Officer Ladner got closer, he saw Johnson exit the truck, close the door, and walk away from the truck. According to Officer Ladner, he had to ask Johnson to stop a few times before Johnson complied. When Officer Ladner asked Johnson what he was doing on the property, Johnson stated that he and another guy were there to help move the truck and that the other guy — a black male — was in the truck. However, no one was inside or around the truck, and the truck was cold when Officer Ladner touched the hood. Officer Ladner asked Johnson for his identification, and Johnson stated it was in the glove box of the truck. However, his identification was not there. Officer Ladner testified, as he looked inside the truck for Johnson’s identification, he observed miscellaneous work papers and “stuff like that” inside, but nothing appeared to be out of place. He also indicated the glove box was closed, and there was no key in the truck’s ignition. According to Officer Ladner, Johnson appeared very nervous and shaken. Officer Ladner patted Johnson down prior to arresting him and did not find anything on Johnson that belonged to Kent Anderson.
¶ 4. At some point in the evening, the owner of the truck, Anderson, came outside. Anderson testified that the truck was unlocked that night, and the key to the truck was inside his house. He stated nothing was missing or out of place in his truck. Anderson noted he used the truck for work and to tow his boat. When asked if he usually kept valuables in his car, he answered in the negative, but he did state that there were “tools usually in there and *319 paperwork.” Anderson testified he kept his lawn tools or carpentry-work tools under his carport or in his truck depending on the type of job he was working on at the time, but he could not say what was in the truck that night. According to Anderson, the only thing he kept in the truck’s glove box was the boat key and the paperwork on the truck. Anderson testified that he did not give Johnson permission to be on his property or in his truck that night. Further, Anderson acknowledged that he had known Johnson for thirteen years and did not like him.
¶ 5. At the end of the State’s case, Johnson moved for a directed verdict arguing that the State failed to prove there were items of value inside the truck and that the State failed to prove the element of intent. The circuit court, after hearing arguments from both sides, found as follows:
The issue[,] as the court sees it, is indeed whether or not there was goods, merchandise[,] or valuable things for use, sale, deposit[,] or transportation in the vehicle and whether or not there is in this record sufficient [proof of] intent to steal.
Certainly with regard to the tools, Mr. Anderson was not specific. He was not asked if on the night of June 14th there were in fact tools in his vehicle. However, he did say sometimes he kept the tools there. He did specifically say that there was paperwork and that it was related to his job.
It’s the court’s opinion that either the paperwork or the tools could be found by the jury to be goods or merchandise. I don’t think technically it would be merchandise, but certainly would be items for use, by Mr. Anderson.
Although I think that there is no definite proof that the tools were in the vehicle, the jury would have to draw that conclusion, there is specific proof the paperwork was there. And there’s specific proof there were other things. No one said what those other things were. So the court can’t make a finding whether they were there for use, sale, deposit[,] or transportation.
In addition to that, it appears that the intent to steal at this point is very thin in this record. It would have to be proven basically by inference and by, as [the prosecutor] argued, a jury believing that he entered the truck with that intent or for a bad intent that would include stealing something, and that he then lied to the officers in order to cover that up.
And certainly there are some reasonable inferences that can be drawn from the time of night and from his activities from the hiding in the bushes and then crossing the street, trying the other door handles, et cetera.
So it appears to the court that while it is thin, it is still a jury issue, and the jury would have to determine what intent is. It’s generally the court’s opinion and the court’s recollection of the cases for virtually all types of crimes that intent is generally a jury issue anyway. So at this point I’m going to deny the directed verdict for those reasons.
¶ 6. After the circuit court denied Johnson’s motion for a' directed verdict, Johnson called Warren Mays to testify. Mays stated that Anderson lived right next door to him and that Johnson was living in the Mays household at the time of the alleged incident. Mays testified that Johnson was not working at the time in question because he had fallen off a ladder while painting, suffered severe back pain, and was taking Lortabs, Somas, and Flexerils to treat his pain. He also testified that Johnson owned a burgundy Dodge truck that was parked in front of Mays’s house. When asked to describe Johnson’s de *320 meanor on the day in question, Mays testified: “He was just not right. He was wandering around just fidgeting around doing different things, moving things back and forth, talking to himself, just being weird. At one point he had like a towel sitting in a chair pretending it was [a] baby.” Before Mays went to bed at approximately 11:00 p.m., he locked all of the doors to the house, thinking that Johnson was inside in his bedroom when in fact he was not. According to Mays, Johnson did not have a key to the house. Further, Mays intentionally hid Johnson’s truck keys that night because Johnson was acting strange. He stated his intention was to make sure Johnson did not drive in that condition.
¶ 7. At the end of the trial, the jury convicted Johnson of burglary, and he was sentenced to seven years, with six -years suspended and one year to serve. Following Johnson’s conviction, he filed a motion for a new trial or, alternatively, for a judgment notwithstanding the verdict (JNOV), which essentially contained the same arguments as Johnson’s motion for a directed verdict but with one addition. Johnson additionally alleged that two jurors had changed their vote from “not guilty” to “guilty” because they did not want to deliberate all day. A hearing was held on Johnson’s post-trial motion, which was denied by the circuit court.
¶ 8. Johnson appeals. Upon review, we find no error. Therefore, we affirm Johnson’s burglary conviction and sentence.
DISCUSSION
¶ 9. Johnson was convicted of burglary under Mississippi Code Annotated section 97-17-83(1) (Rev.2006), which in relevant part provides:
Every person who shall be convicted of breaking and entering, in the day or night, any ... automobile ... in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony, ... shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.
Therefore, in order to establish Johnson committed burglary, the State was required to prove Johnson “(1) broke into and entered an automobile; (2) ‘in which any goods, merchandise, equipment, or valuable things shall be kept for use, sale, deposit, or transportation!);] (3) with the intent to steal therein, or commit any felony.’ ” Riley v. State, 11 So.3d 751, 753 (¶ 9) (Miss.Ct.App.2008). Johnson challenges the sufficiency of the evidence and the weight of the evidence. We will address these challenges separately before addressing the jury issue.
I. Sufficiency of the Evidence
¶ 10. The Mississippi Supreme Court has stated the following regarding a suffi-eiency-of-the-evidence analysis:
[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict ..., the critical inquiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support the conviction.”
Bush v. State, 895 So.2d 836, 843 (¶16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). “However, this inquiry does not require a court to ‘ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.’ ” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Rather, “the *321 relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. Further:
Should the facts and inferences considered in a challenge to the sufficiency of the evidence “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” the proper remedy is for the appellate court to reverse and render. However, if a review of the evidence reveals that it is of such quality and weight that, “having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,” the evidence will be deemed to have been sufficient.
Id. (internal citations omitted).
¶ 11. As to the element of intent in the context of burglary, our supreme court has stated the following:
Some presumptions are to be indulged in against one who enters a building unbidden at a late hour of night, else the burglar caught without booty might escape the penalties of the law. People are not accustomed in the nighttime to enter homes of others, when asleep, with innocent purposes. The usual object is theft; and this is the inference ordinarily to be drawn in the absence of explanation from breaking and entering at night accompanied by flight when discovered, even though nothing has been taken.
Brown v. State, 799 So.2d 870, 872 (¶8) (Miss.2001) (quoting Nichols v. State, 207 Miss. 291, 296-97, 42 So.2d 201, 202-03 (1949)). Additionally, “an ‘inference of the intent to steal may arise from proof of the breaking and entering.’ ” Riley, 11 So.3d at 754 (¶ 14) (quoting Broomfield v. State, 878 So.2d 207, 214 (¶22) (Miss.Ct.App.2004)). Further, “intent is an emotional operation of the mind, and [it] is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time.” Brown, 799 So.2d at 872 (¶8) (quoting Newburn v. State, 205 So.2d 260, 265 (Miss.1967)). Stated simply, a “[d]efen-dant’s intention is manifested largely by the things he does.” Id.
¶ 12. Considering the evidence in the light most favorable to the prosecution, we find there was sufficient evidence on the intent element to convict Johnson of burglary because Johnson’s intent could be inferred from his behavior immediately prior to his arrest. It is undisputed Johnson broke into and entered Anderson’s truck. Furthermore, Johnson was observed hiding in bushes at nighttime, and he attempted to open the door of at least one other vehicle, which was locked, before entering Anderson’s truck. Officer Lad-ner testified that he had to ask Johnson to stop a few times before he complied, and Johnson lied to him about the whereabouts of his. identification and the reason for his presence in the truck that night. It was for the jury to be the “sole judge of the credibility of witnesses and the weight and worth of their testimonies].” Riley, 11 So.3d at 754-55 (¶ 16) (quoting Harris v. State, 970 So.2d 151, 156 (¶20) (Miss.2007)). We find that any rational trier of fact could have reasonably inferred the intent element of burglary. Therefore, this issue is without merit.
¶13. Johnson also argues there was insufficient evidence to prove Anderson’s truck contained any “goods, merchandise, equipment!,] or valuable thing ... kept for use, sale, deposit[,] or *322 transportation” as required under the burglary statute. Miss.Code Ann. § 97-17-33(1). This Court has held that where a jury can reasonably infer that a vehicle contained “at least two seats, a steering wheel, a gear shift, acceleration and brake pedals, and other items necessary for operation of the vehicle[,]” that such items qualify as “equipment, or valuable things ... kept for use.” Riley, 11 So.3d at 754 (¶ 12).
¶ 14. In this case, Officer Ladner testified that he observed miscellaneous work papers inside the truck. Anderson testified that the key to his boat was in the glove box that night and that he usually kept tools and paperwork inside the truck for his lawn-care and carpentry jobs. Anderson further testified he uses the truck as a work truck. Clark testified he observed Johnson sitting in the truck, which would give rise to an inference that the truck contained a seat in accordance with Riley. Based on the evidence, we find that the jury could have reasonably inferred that Anderson’s truck contained “equipment ... or valuable things ... kept for use.” Id.
¶ 15. In sum, we find that the evidence presented by the State was sufficient to support Johnson’s burglary conviction. Therefore, this issue is without merit.
II. Weight of the Evidence
 ¶ 16. Johnson also argues that his burglary conviction is against the overwhelming weight of the evidence. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). “The motion ... is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. Additionally, “the evidence should be weighed in the light most favorable to the verdict.” Id. “A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, ‘unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict.’ ” Id. (citing McQueen v. State, 423 So.2d 800, 803 (Miss.1982)). Instead, “the court simply disagrees with the jury’s resolution of the conflicting testimony.” - Id. “This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves.” Id. Rather, “the proper remedy is to grant a new trial.” Id.
¶ 17. Under this argument, Johnson claims that the State’s case was very thin, premised upon inferences, and speculative. Johnson specifically notes he used various pain medications for his injury which caused him to appear disoriented. Accordingly, he contends the jury could not have found him guilty of burglary. However, Johnson fails to cite any authority to support his position. Therefore, under Mississippi Rule of Appellate Procedure 28(a)(6), his argument is procedurally barred. Notwithstanding the procedural bar, we also find that this issue is without merit because it was proper for a jury to infer intent by the mere fact that Johnson broke into and entered Anderson’s truck. See Riley, 11 So.3d at 754 (¶ 14) (citing Broomfield, 878 So.2d at 214 (¶ 22)) (noting that “an ‘inference of the intent to steal may arise from proof of the breaking and entering’ ”). Further, even if Johnson was under the influence of medication that made him disoriented, this fact certainly would not preclude a jury from returning a guilty verdict for the crime of burglary. *323 See Harper v. State, 478 So.2d 1017, 1019 (Miss.1985) (noting that defendant’s “state of intoxication on the occasion in question, indisputably extensive, [did] not operate to [negate] criminal intent” in a burglary case). As such, viewing the evidence in the light most favorable to the verdict, we cannot say that Johnson’s conviction is against the overwhelming weight of the evidence. Therefore, this issue is proee-durally barred and without merit.
III. Jury’s Conduct
¶ 18. Johnson argues that the verdict was improper due to jury misconduct. Although Johnson does not cite the rule, we find Rule 606(b) of the Mississippi Rules of Evidence to be instructive. That rule provides as follows:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon that or any other juror’s mind or emotions as influencing assent to or dissent from the verdict or indictment or concerning the juror’s mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury’s attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror’s affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.
M.R.E. 606(b) (emphasis added).
¶ 19. In the instant case, Johnson alleges that a juror told Johnson’s attorney that he and one other juror initially intended to vote “not guilty,” but they changed their vote to “guilty” in order to avoid additional deliberation time. This alleged conversation occurred after the jury was finally released. However, when this juror was called to testify at a post-trial hearing on the matter, the juror denied making any such statement. Johnson’s attorney testified that this juror indicated to him that Johnson had no business being in the truck, even if it was unlocked. In the attorney’s opinion, the juror felt Johnson was guilty. After hearing the testimonies of the juror and the attorney, the circuit court denied Johnson’s motion. We find nothing in the record that indicates there was any “extraneous prejudicial information [that] was improperly brought to the jury’s attention” or “any outside influence [that] was improperly brought to bear upon any juror” under Rule 606(b). Therefore, this issue is without merit.
¶ 20. For the above and foregoing reasons, Johnson’s judgment of conviction of burglary and sentence is affirmed.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF BURGLARY AND SENTENCE OF SEVEN YEARS, WITH SIX YEARS SUSPENDED AND ONE YEAR TO SERVE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.