CARLSON, Presiding Justice,
for the Court:
¶ 1. David Anthony Jackson appeals his house-burglary conviction and twenty-five-year penitentiary sentence. Finding no error, we affirm the judgment of conviction and sentence entered in the Circuit Court for the First Judicial District of Hinds County.
PROCEDURAL HISTORY
¶ 2. The Jackson home of former United States Senator and Mrs. Trent Lott was burglarized on April 27, 2009. Jackson was indicted on October 2, 2009, by the Grand Jury for the First Judicial District of Hinds County for the felonious breaking and entering of a dwelling house with the intent to take, steal, or carry away the property of the homeowner in violation of Mississippi Code Section 97-17-23 (1972, as amended). On October 18, 2010, Jackson was brought to trial in the Circuit Court for the First Judicial District of Hinds County, Judge W. Swan Yerger presiding. The State called ten witnesses and offered thirty exhibits into evidence. When the State rested, Jackson moved for a directed verdict, which was denied. The defense rested without offering any evidence. The trial court refused one of Jackson’s proposed jury instructions, D-3, which provided for the lesser-included offense of trespass. On October 21, 2010, the jury found Jackson guilty of house burglary. He was sentenced by the trial judge as a habitual offender to twenty-five years in the custody of the Mississippi Department of Corrections.
¶ 3. On October 29, 2010, Jackson filed a Motion for Judgment Notwithstanding the Verdict, Or In The Alternative, For A New Trial. The circuit court denied this motion. Aggrieved, Jackson filed this appeal, raising three assignments of error: (1) that the evidence was insufficient to sustain his conviction, specifically that the State failed to establish Jackson’s intent to commit the crime of larceny once inside the house; (2) that the trial court erred in refusing to give Jackson’s proffered jury instruction (D-3) for the lesser-included offense of trespass; and (3) that the trial court erred in denying Jackson’s Motion for a Directed Verdict and his Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for a New Trial.
FACTS
¶ 4. Since two of the three errors assigned by Jackson in today’s case pertain to the legal sufficiency of the evidence and the weight of the evidence, it is necessary that we set out the facts of this case in detail. Extensive trial testimony was delivered by a number of witnesses. Our presentation of the facts comes via the witnesses who testified for the State of Mississippi during the trial. The defendant, David Anthony Jackson, offered no evidence in his case-in-chief. Whenever we are confronted with an attack on the sufficiency of the evidence, we are required to view the evidence in the light most favorable to the prosecution. Taylor v. State, 62 So.3d 962, 965 (Miss.2011). Thus, we present the testimony of the witnesses in this light.
*600 Deputy Charles Hamil
¶ 5. On April 27, 2009, Deputy Charles Hamil of the Hinds County Sheriffs Department was dispatched to investigate a house alarm that had gone off at the Lotts’ home in Jackson. The Lotts’ house was located approximately a mile and a half from any other dwelling and was in a wooded area. Deputy Hamil noted a blue SUV parked at the side of the road, which struck him as unusual, since the Lotts own both sides of the road. When Deputy Hamil got to the main entrance of the property, two men in a white truck came down the driveway and explained to Hamil that they had been cutting trees on the property and had noted that the house’s back door had been kicked in. Hamil did not remember the names of the two men, but from the record, it is clear that these men were Dwight McCrory and Morris Gray. Hamil asked McCrory to stay with the vehicle, and then he and Gray approached the house.
¶ 6. Hamil noted that the door had been kicked in and announced himself loudly. He checked the house thoroughly, but did not find anyone in the house. The door had been forced open, and a footprint was visible on the door. Drawers lay open, and personal property was strewn about the house, which Hamil noted was indicative of a house burglary. In particular, Hamil recalled that the gun cabinet and a study desk appeared disturbed; in the latter case, paper had been strewn everywhere.
¶ 7. McCrory, who had been standing by the SUV, called Gray, who was still with Hamil, and reported seeing a man running across the road and into the woods. Ham-il began a foot pursuit of the man through the woods. While still in the woods, Hamil was informed via radio by Deputy Kenneth Ledford, who recently had arrived at the scene, that the suspect was fleeing down the road. By the time Hamil got back to the road, other deputies had taken the suspect, later identified as Jackson, into custody.
Deputy Kenneth Ledford
¶ 8. Deputy Ledford arrived on the scene in response to a dispatch concerning Hamil’s investigation, and Hamil requested that he (Ledford) station himself next to the SUV, a Chevrolet Blazer. Ledford learned that the tag on the SUV had been issued to Carolyn Jackson, who later was discovered to be Jackson’s wife, and Led-ford found Jackson’s driver’s license in the car. Ledford stated that Captain Nathaniel Ross arrived on the scene and asked Ledford what the suspect was wearing. When Ledford relayed that he had on dark shorts, a gray shirt, and tennis shoes, Ross told Ledford that he had just seen an individual possibly fitting that description exit the woods.
¶ 9. Thereafter, the suspect crossed the road, and Ledford and another deputy, Jack Lilley, detained him. When apprehended, the suspect, Jackson, was sweaty, had leaves from the woods on his person, and had several scratches on his skin. Ledford was able to ascertain Jackson’s address, and characterized it as “nowhere near” the Lott home. When apprehended, Jackson was not carrying any stolen items.
Morris Gray
¶ 10. Morris Gray, a groundskeeper, was on the Lott property on April 27, 2009, assisting logger Dwight McCrory, who was cutting timber on the property. As the two men passed the house, they heard the burglar alarm going off. Gray also noted that a side door had been “busted open.” Gray entered the house and discovered that someone had been going through the checkbook in the bedroom, as well as the gun cabinet. Gray called Senator Lott, who informed him that the alarm *601 automatically would shut off after fifteen minutes. With this information, after the alarm shut off, Gray was able to estimate when the break-in had occurred. Gray did not see anyone in the house, but did notice that the bathroom door was closed.
¶ 11. Shortly thereafter, Deputy Hamil arrived and asked McCrory to stay by the car and watch for the suspect, while Hamil and Gray returned to the house. Upon reentering the house with Hamil, Gray found the bathroom door open. At this point, only five or six minutes had passed since Gray had left the house after noticing that the bathroom door was closed. While searching the house, Gray got a call from McCrory indicating that someone had just crossed the road and entered the woods. Gray believed the house door had been beaten open with a stick of firewood.
Dwight McCrory
¶ 12. Dwight McCrory had entered the house with Gray before Hamil arrived. The door appeared to have been forced open, and items had been pulled out from under the gun cabinet. McCrory observed the SUV parked about 100 yards from the property. McCrory waited by the SUV, as he was instructed to do by Hamil. While waiting there, McCrory observed someone cross the road about 200 yards away and enter the woods. McCrory alerted a deputy that the suspect was passing by, and the deputies then detained and handcuffed the suspect.
Former Senator Trent Lott
¶ 13. Senator Lott was out of town when the break-in occurred, but was immediately informed that the alarm had gone off, as well as receiving a call from his friend, Morris Gray. Both his house and a smaller, adjacent guest house were broken into, and “clearly there had been some rummaging through drawers.” It appeared to Lott that the guest-house door was broken open with a fire extinguisher and that the main-house door been broken open with a piece of firewood. A window also had been broken. Lott’s effects had been moved around, which was clearly evident to him, since he identified his habits as neat and orderly. Lott did not know Jackson and did not give him permission to be in his house. Lott could not determine if anything had been stolen. Although the Lotts did not keep much money or jewelry in the house, there were items of value in the house. A check was missing from the checkbook, on which the Lotts stopped payment, but no evidence linked the check to Jackson.
Captain Nathaniel Ross
¶ 14. Captain Nathaniel Ross of the Hinds County Sheriffs Department responded to the scene after being contacted by the dispatcher. As Ross approached the scene and before he received a description of the suspect, he noticed Jackson walking down the road, dirty, scratched, and covered in leaves and grass. Ross had a brief conversation with Jackson at that point. When Ross arrived at the scene, he asked Ledford for a description of the suspect; once he had heard it, he told Ledford that he had just passed an individual matching that description on the highway. Ross was among the officers who arrested Jackson. Ross also had seen Jackson walk directly past his own car, next to which officers were standing, without stopping or approaching the vehicle. Ross did not find any stolen property in Jackson’s possession.
Investigator Jack Lilley
¶ 15. Investigator Jack Lilley of the Hinds County Sheriffs Department also responded to a dispatch concerning the house burglary. While driving to the Lott property, Lilley heard on the police radio that the suspect had been sighted running across the road. Lilley spoke to Hamil *602 before Hamil began his foot pursuit, then Lilley himself entered the woods in a different location, looking for the suspect.
¶ 16. Lilley went through the contents of the SUV with Ledford and found Jackson’s driver’s license. Afterward, Ross arrived and told Lilley and Ledford that he had seen a man matching Jackson’s description. The three officers then drove up to Jackson and took him into custody on suspicion of house burglary. Jackson was covered in leaves and other debris, which indicated to Lilley that Jackson had been running through the woods.
¶ 17. Sometime after the arrest, Lilley investigated the Lott property and discovered a footprint on a door which had not been forced or opened. However, he discovered another door that had been forcibly broken into. Lilley entered the house and noticed that “some things had been kind of shuffled around, were in disarray.” He particularly noted that the gun cabinet and a desk in the bedroom had been disturbed. Lilley could not recover any fingerprints. Lilley found no direct physical evidence at the house or on the property linking the burglary to Jackson.
Investigator Eric Rather
¶ 18. Eric Rather, an investigator for the Hinds County Sheriffs Department, participated in the Crime Scene Unit’s investigation of this site. Rather noted a broken window in the guest house which he believed to have been broken by a fire extinguisher, since the extinguisher had released dust in the area. Shoe impressions were on the patio of the guest house. Footprints also were inside the guest house. Rather did not find any usable fingerprints.
Investigator Trey Brister
¶ 19. Investigator Trey Brister of the Hind’s County Sheriffs Department collected Jackson’s U.S. Polo Association brand tennis shoes worn the day of the crime, and established the chain of custody. The shoes were turned over to an expert-so that he could compare them to the prints from the crime scene. No footprints, to Brister’s knowledge, were found in the main house, but only in the guest house.
Paul Sherman Wilkerson, Jr.
¶ 20. Paul Sherman Wilkerson, Jr., a Mississippi Crime Laboratory employee, is a graduate of the FBI National Academy and has attended numerous courses in footwear identification, including the FBI footwear identification course. Wilkerson is certified by the International Association for Identification as a footwear examiner, and also is certified as a forensic photographer by the International Association for Identification. Wilkerson has been qualified as an expert in the courts of the State of Mississippi more than 100 times.
1121. Wilkerson compared the prints from Jackson’s footwear to those photographed at the crime scene. He determined that the prints had the same outsole imprint, a finding which incorporated an examination of both the physical characteristics of the outsole and the physical wear upon it. Wilkerson had tested several thousand pairs of shoes, and this was the only time that he had tested shoes of this brand (U.S. Polo Association). In this case, the prints he tested all had the same physical size, outsole design, and degree of wear.
¶ 22. Wilkerson conceded that it was possible that another shoe of the same size, outsole design, and degree of wear had made the shoe impression. While Wilkerson stated that the photographs were of good quality, the footprint impressions were too indistinct for Wilkerson to determine that Jackson’s shoes and only Jackson’s shoes could have left them.
*603 DISCUSSION
¶ 23. While we will address all issues raised by Jackson, we have chosen to organize our analysis differently from his three issues as presented. Since motions for a directed verdict and motions for judgment notwithstanding the verdict both attack the legal sufficiency of the evidence, we have analyzed these issues together with Jackson’s general contention of insufficiency of the evidence; the Motion for a New Trial, which addresses a different standard, is considered separately.
I. WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION FOR A DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT DUE TO THE INSUFFICIENCY OF THE EVIDENCE.
¶ 24. Jackson argues that the evidence against him was not legally sufficient to sustain a conviction for house burglary, due to the fact that the evidence did not support a finding that he had the intent to commit the crime of larceny once inside the Lotts’ house. Therefore, Jackson argues that the State failed to prove all of the requisite elements of the crime of house burglary — specifically, to prove that Jackson had the intent to commit the crime of larceny. We disagree. Ample, indeed overwhelming, evidence supported the trial court’s finding that Jackson had the intent to commit larceny once inside the Lotts’ home.
¶ 25. We also address here Jackson’s argument that the trial court erred in denying Jackson’s Motion for a Directed Verdict and in denying his Motion for a Judgment Notwithstanding the Verdict. Motions for a directed verdict and motions for judgment notwithstanding the verdict both attack the legal sufficiency of the evidence. Knight v. State, 72 So.3d 1056, 1063 (Miss.2011) (citing Bush v. State, 895 So.2d 836, 843 (Miss.2005)).
When considering a trial court’s denial of a motion for judgment notwithstanding the verdict, the standard of review is de novo. Poole v. Avara, 908 So.2d 716, 726 (Miss.2005). The trial court must view the evidence in the light most favorable to the non-moving party and look only to the sufficiency, and not the weight of the evidence. Id.
Gilmer v. State, 955 So.2d 829, 833 (Miss.2007). Since the sufficiency of the evidence is the key inquiry here, we address these arguments together. A Motion for a New Trial, on the other hand, addresses the overwhelming weight of the evidence, and therefore, that issue will be considered separately.
¶ 26. The grand-jury indictment against Jackson alleges, in pertinent part:
[O]n or about the 27th day of April, 2009 ... [Jackson] did willfully, unlawfully and feloniously break and enter, in the day or night, the dwelling house of Trent Lott, located at ... Jackson, Mississippi, with the intent to commit a crime therein, to-wit: to take, steal or carry away personal property of the homeowner therein, in the First Judicial District of Hinds County, Mississippi, in violation of Mississippi Code Annotated 97-17-23 (1972), as amended....
The statute under which Jackson was indicted, Mississippi Code Section 97-17-23 (Rev. 2006), as amended in 2008, states in pertinent part:
(1) Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with *604 intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.
Miss.Code Ann. § 97-17-23 (Supp.2011).
¶ 27. Burglary of a dwelling has two elements: (1) unlawful breaking and entering, and (2) intent to commit a crime therein. Kirkwood v. State, 52 So.3d 1184, 1187 (Miss.2011). Felonious intent is an issue of fact which falls within the exclusive province of the jury. Croft v. State, 992 So.2d 1151, 1158 (Miss.2008) (citation omitted). Intent may be proved by circumstantial evidence. Franklin v. State, 676 So.2d 287, 289 (Miss.1996) (citing Stinson v. State, 375 So.2d 235, 236 (Miss.1979)) (citations omitted). This Court has held as follows:
Some presumptions are to be indulged in against one who enters a building unbidden at a late hour of night, else the burglar caught without booty might escape the penalties of the law. People are not accustomed in the nighttime to enter homes of others, when asleep, with innocent purposes. The usual object is theft; and this is the inference ordinarily to be drawn in the absence of explanation from breaking and entering at night accompanied by flight when discovered, even though nothing has been taken.
Brown v. State, 799 So.2d 870, 872 (Miss.2001) (citing Nichols v. State, 207 Miss. 291, 296-97, 42 So.2d 201, 202-03 (1949)).
¶ 28. In this case, the evidence showed that Jackson had parked his car away from the Lott house but on the Lott property. The window of the guest house was broken, apparently with a fire extinguisher, and the guest house had been rummaged through. At the main house, a footprint was found on a door, indicating that someone had attempted to kick down the door with a foot. Another door was broken down, apparently with a piece of firewood. The main house also had been rummaged through, with drawers and the gun cabinet opened, various items strewn around, and a check from the checkbook missing.
¶ 29. When Gray first entered the house, the alarm, which went off for only fifteen minutes after being triggered, was still going off, and the bathroom door was closed. When he returned with a deputy five or six minutes later, the bathroom door was open. A few minutes later, Jackson was seen crossing the road and disappearing into the woods. He walked right past his own car, next to which officers were standing. He later was apprehended and found scratched, dirty, and covered in leaves. Shoe-print analysis showed that the individual who had entered and rummaged through both houses had shoes of the same brand, size, and degree of wear as Jackson. Jackson does not advance the argument that another individual may have committed the crime.
¶ 30. The jury had the right to make the logical inference that Jackson broke and entered the Lotts’ main house and guest house with the intent to commit larceny. Law-abiding citizens do not break into the homes of people they do not know and rummage through their effects, then flee when their actions are discovered. The evidence at trial was sufficient to prove that Jackson had such intent, and the jury so determined after assessing the credibility of each witness and the evidence presented. Indeed, it strains credulity to argue that Jackson broke into the Lotts’ house and rummaged through their personal effects without the intent to commit larceny. The evidence was sufficient to support the verdict; therefore, we find no error in the trial court’s denial of Jackson’s Motion for Directed Verdict, and *605 Jackson’s Motion for Judgment Notwithstanding the Verdict.
II. WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION FOR A NEW TRIAL.
¶ 81. The Motion for a New Trial presents a distinct issue that addresses the overwhelming weight of the evidence. When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d at 844 (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). A motion for a new trial is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked “only in exceptional cases when the evidence preponderates heavily against the verdict.” Page v. State, 64 So.3d 482, 488 (Miss.2011) (citing Bush, 895 So.2d at 844 (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947 (Miss.2000))). “[T]he evidence should be weighed in the light most favorable to the verdict.” Bush, 895 So.2d at 844 (citation omitted).
¶ 32. We have discussed at length, supra, the evidence presented against Jackson at trial. Without discussing the evidence again concerning Jackson’s “weight of the evidence” argument under this issue, suffice it to state here that, from the record before us, we cannot find that the verdict was against the overwhelming weight of the evidence, nor that allowing the verdict to stand would sanction an unconscionable injustice. Therefore, the trial court acted within its discretion in denying Jackson’s Motion for a New Trial. That being the case, we find that this argument is without merit.
III. WHETHER THE TRIAL COURT ERRED IN DENYING PROPOSED JURY INSTRUCTION NUMBER D-3.
¶ 33. Jackson claims that the circuit court erred in refusing his proposed jury instruction number D-3, instructing the jury on the lesser-included offense of trespass. Jackson argues that it was reversible error not to grant this instruction, since the State did not prove that he had the intent to commit a felony while on the Lott property.
¶ 34. Where there exists a claim that a defendant “was entitled to a lesser-included offense instruction, we conduct [a] de novo review, as this is a question of law.” Downs v. State, 962 So.2d 1255, 1258 (Miss.2007) (citation omitted). This Court has stated:
The question is not whether the evidence was sufficient so that a rational jury could have found beyond a reasonable doubt that [the defendant] broke into the [victim’s] home with intent to [commit a crime] but whether the evidence is so clear that no reasonable juror could have accepted [the defendant’s] theory that his intent to [commit a crime] was formed after he was in the house....
[A] lesser included offense instruction should be granted unless the trial judge — and ultimately this Court — can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser-included offense (and conversely not guilty of at least one essential element of the principal charge).
*606 Harper v. State, 478 So.2d 1017, 1021 (Miss.1985). “The general rule with regard to jury instructions is that the trial court has considerable discretion when instructing the jury....” Utz v. Running & Rolling Trucking, Inc., 32 So.3d 450, 474 (Miss.2010). “Only where the evidence could only justify a conviction of the principal charge should a lesser offense instruction be refused.” Ford v. State, 975 So.2d 859, 864 (Miss.2008) (citing Mease v. State, 539 So.2d 1324, 1330 (Miss.1989) (emphasis in original) (citations omitted)). “[A] trial judge may refuse a proposed jury instruction that is an incorrect statement of the law, repeats a theory covered in other instructions, or has no proper foundation in the evidence before the court.” Utz, 32 So.3d at 474, (citing Investor Res. Services, Inc. v. Cato, 15 So.3d 412, 423 (Miss.2009)).
¶ 35. Implicit in every conviction of burglary is the finding that the defendant committed a trespass. Wilson v. State, 639 So.2d 1326, 1331 (Miss.1994) (citing Anderson v. State, 290 So.2d 628, 628-29 (Miss.1974)). From the language of his proffered jury instruction on the lesser-included offense, and from the argument in his brief, it is clear that Jackson sought a jury instruction on trespass under Mississippi Code Section 97-17-87 (Rev. 2006), one of several statutes that address trespass. But Section 97-17-87 is merely a “catch-all” statute which states in pertinent part:
(1) Any person who shall be guilty of a willful or malicious trespass upon the real or personal property of another, for which no other penalty is prescribed, shall, upon conviction, be fined not exceeding Five Hundred Dollars ($500.00), or imprisoned not longer than six (6) months in the county jail, or both.
The reader is not informed as to what acts constitute “willful or malicious trespass.” The only reference to any trespass statute found in Jackson’s brief is Section 97-17-87. In his brief, Jackson states “[t]he elements of trespass include willfully and maliciously entering another’s property without permission or remaining on his or her property after being told to leave. Miss.Code Ann. § 97-17-87 (Rev. 2000).” However, a reading of the statute above reveals that the elements “without permission or remaining on his or her property after being told to leave” are not found in Section 97-17-87. The pertinent portion of proffered Jury Instruction D-3 reads:
The Court instructs the jury that Trespass is a lesser-included offense of burglary. The elements of trespass include willfully and maliciously entering another’s property without permission or remaining on his or her property after being told to leave.[1]
¶ 36. With this being said on the proffered trespass instruction, which was denied by the trial judge, we now look at the evidence before the trial judge at the time he considered the issue of whether to grant or deny Jury Instruction D-3. Here, as discussed above in consideration of the first issue, the evidence is overwhelming that Jackson broke into the Lott home with the intent to commit larceny. The fact that the evidence is merely circumstantial is no bar to this finding. Franklin, 676 So.2d at 289. The inference ordinarily to be drawn from an unexplained breaking and entering into the home of another person unknown to the defendant, followed by rummaging through the victim’s effects and fleeing upon discovery, is that the defendant had the intent to commit larceny. Brown, 799 So.2d at 872. In *607 contrast, the inference that Jackson was merely a trespasser without other criminal intent is not reasonable under these facts.
¶ 37. Jackson specifically argues that this case is similar to Alford v. State, 656 So.2d 1186, 1192 (Miss.1995). In that case Alford was indicted for house burglary with the intent to commit the crime of assault once inside the house. Alford had entered the home of an alleged acquaintance late at night. A thirteen-year-old girl whom he encountered therein was startled by Alford’s presence and screamed. Alford grabbed the girl’s arm in an effort to calm her down so that the girl’s grandmother would not be awakened by her screams. Alford, 656 So.2d at 1188-89. This Court found that merely pulling the arm was not sufficient to prove that the defendant had the necessary intent to commit the assault. Id. at 1190. The case was therefore remanded for re-sentencing on the lesser-included offense of trespass. Id. at 1192.
¶ 38. We find Alford to be inapposite to the instant case. Jackson, unlike Alford, is not alleged to have known his victims, the Lotts. Furthermore, in Alford, there was no proof indicating that Alford’s intent to commit the assault arose prior to the break-in. In contrast, it strains credulity to argue that Jackson broke into the relatively isolated house of the Lotts and only thereafter developed an intent to commit a larceny.
¶ 39. Jackson also relies on Warren v. State, 709 So.2d 415, 425 (Miss.1998), in which this Court held that a defendant indicted for voyeurism was entitled to a jury instruction on the lesser-included offense of trespass. In Warren, the indictment alleged that Warren peeped through a window of the house of the victim, James, with a lewd, licentious, and indecent purpose. Warren, 709 So.2d at 417. However, this Court found that James’s testimony revealed only that Warren had threatened her life and the lives of her children on the night in question, not that he had a lewd, licentious, or indecent purpose. Id. Jackson notes that in that case, Warren argued that he was not even on the defendant’s property at the time that this Court found him to be entitled to a trespass instruction as a lesser-included offense of voyeurism. Id. at 420.
¶ 40. However, we do not find Warren to be applicable. Burglary is a very different crime from voyeurism. Furthermore, in Warren, this Court found that “there was evidence to support the lesser included instruction on trespassing, and the instruction should have been given.” Id. This Court found discrepancies in the victim’s statement. Id. at 419. The jury could have “decided to believe everything that [victim] James stated except that portion of her testimony suggesting [defendant] Warren’s lewd purpose.” Id. at 420. In this case, as discussed above, no reasonable jury would have found that Jackson’s sole crime was trespass without the intent to commit larceny. Accordingly, Warren provides no support for Jackson’s argument under the facts of the instant case.
¶ 41. We find, taking the evidence in the light most favorable to Jackson, and considering all reasonable favorable inferences which may be drawn in favor of Jackson from the evidence, that no reasonable jury could find Jackson guilty only of the lesser-included offense of trespass, and conversely not guilty of at least one essential element of the principal charge of house burglary. See Harper, 478 So.2d at 1021. As a result, there was no basis in the evidence for an instruction on trespass as a lesser-included offense, and thus, the trial court did not commit error in refusing this trespass instruction.
CONCLUSION
¶42. Based on today’s discussion, we conclude that the jury’s verdict finding *608 David Anthony Jackson guilty of the crime of burglary of a dwelling house with the intent to commit the crime of larceny once inside, is supported by legally sufficient evidence and that the verdict is not contrary to the weight of the evidence. Likewise, the evidence did not support a grant of the proffered lesser-included-crime instruction on trespass. Thus the judgment of conviction and sentence entered by the Circuit Court for the First Judicial District of Hinds County is affirmed.
¶ 43. CONVICTION OF HOUSE BURGLARY AND SENTENCE OF TWENTY-FIVE (25) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. UPON RELEASE, THE APPELLANT SHALL PAY ALL COSTS OF COURT, ASSESSMENTS, AND TAXES, EXCEPT AS RELIEVED BY LAW FOR INDIGENTS. SENTENCE SHALL NOT BE REDUCED OR SUSPENDED, NOR SHALL THE APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION. SENTENCE IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY OTHER SENTENCES IMPOSED UPON THE APPELLANT BY ANY COURT.
WALLER, C.J., RANDOLPH, LAMAR, CHANDLER, PIERCE AND KING, JJ„ CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.

. Most likely, Jackson's counsel had in mind Mississippi Code Section 97-17-85 (Rev. 2006).