# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-02132-COA

RICHARD WHITE A/K/A TONEY BUCK A/K/A        APPELLANT
RICHARD DELAINE WHITE

v.

STATE OF MISSISSIPPI                                                        APPELLEE

DATE OF JUDGMENT:               10/18/2013
TRIAL JUDGE:                          HON. ALBERT B. SMITH III
COURT FROM WHICH APPEALED:   QUITMAN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                                      BY: ERIN ELIZABETH PRIDGEN
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                                      BY: JEFFREY A. KLINGFUSS
DISTRICT ATTORNEY:               BRENDA FAY MITCHELL
NATURE OF THE CASE:             CRIMINAL - FELONY
TRIAL COURT DISPOSITION:        CONVICTED OF BURGLARY OF A
                                      DWELLING AND SENTENCED TO
                                      TWENTY-FIVE YEARS IN THE CUSTODY
                                      OF THE  MISSISSIPPI DEPARTMENT OF
                                      CORRECTIONS, WITH THE SENTENCE TO
                                      RUN CONSECUTIVELY TO ANY
                                      PREVIOUSLY IMPOSED SENTENCES
DISPOSITION:                       AFFIRMED - 06/30/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

   **EN BANC.**

   **ROBERTS, J., FOR THE COURT:**

¶1.    A jury sitting before the Quitman County Circuit Court found Richard White guilty

of burglary of a dwelling.[1]  The circuit court sentenced White to twenty-five years in the

---

   [1]  The jury found that White was not guilty of aggravated assault.

custody of the Mississippi Department of Corrections. White appeals and makes only one claim. He argues that the circuit court committed plain error when it did not sua sponte instruct the jury on the elements of larceny and/or assault – the underlying intended crimes that the indictment listed for the burglary charge. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. For more than thirty-five years, Newell Inman and his wife, Johanna, lived at the same address in Lambert, Mississippi, a small town in Quitman County. On Sunday, January 29, 2012, Newell and Johanna drove to Okolona, Mississippi, to visit a sick relative in the hospital. It was dark when they arrived home a little after 7 p.m. Newell was driving, and Johanna was in the front passenger's seat.

¶3. As they approached their home, Newell and Johanna both noticed that a light was on in one of the two storage rooms connected to their carport. The doors to the storage rooms were shut and unlocked. Newell thought that Johanna had left the light on, and Johanna thought that Newell was responsible for the light. As Johanna was exiting the parked car, Newell asked her to turn off the light in the storage room, which was immediately to her right. Johanna opened the storage-room door just enough to reach the light switch inside. But the light was already off. Johanna turned the light back on.

¶4. Johanna was surprised by an intruder in her storage room. His hands were behind his back, as though he was hiding a weapon. According to Johanna, the intruder was standing in a "parade rest" or "at ease" military posture. Johanna screamed for Newell.

¶5. As sixty-five-year-old Newell rushed around the car to help Johanna, the intruder tried

2

to escape. Newell swung at him – and missed. The significantly younger intruder pummeled Newell with something metallic, knocking Newell to his knees and shattering his glasses. Newell's head was severely lacerated, and his right arm was broken.[2] The intruder fled around the carport and across the yard. Regaining his balance, Newell briefly tried to chase the intruder. Newell had to stop when blood from the lacerations on his head began to obscure his vision.

¶6.     While driving to the emergency room, Johanna called 911. At that time, Johanna did not recognize the intruder. But Newell did from the many times he had seen him around town. However, Newell did not know the intruder's name.

¶7.     The next day, the Inmans positively identified White as the intruder. They recognized him from a photograph that was presented by law enforcement. Johanna also showed law-enforcement officers the undisturbed metal file that she had found in the front yard. Newell inventoried the storage room and discovered that he was missing a hammer, a pair of Channellock pliers, at least two files, and some of his screwdrivers. Law-enforcement officers found a fingerprint on a box in the storage room where the intruder had been hiding. A fingerprint examiner from the Mississippi Crime Laboratory later testified that the fingerprint matched the middle finger on White's left hand. Newell and Johanna both testified during White's trial. They each identified White as the intruder.

¶8.     White was questioned after he was arrested. He denied any involvement in the burglary. At trial, White testified that he was at his home in Lambert with family when the

---

[2] After an orthopedic physician set the bone, Newell wore a sling for months. He later received extensive therapy.

crimes occurred. But he did not call any witnesses to corroborate his claimed alibi.

¶9. In rebuttal, the prosecution called Charlie Booker Jr., who lived close to the Inmans' residence. Booker testified that White had been at his house late on the afternoon of the burglary. White had stopped by to see Booker's father. White left on foot after Booker told him that his father was not at home.

¶10. During closing arguments, White's attorney argued that the Inmans' in-court identification of White was tainted by the allegedly suggestive photo identification the day after the crime. White's attorney also argued that the fingerprint examiner's testimony was just an opinion, and experts often make mistakes. White did not dispute that the intruder, whoever he was, broke into the Inmans' storage room to steal something and/or arm himself in case he was discovered. Neither White nor the State submitted a proposed jury instruction on the essential elements of larceny. However, the jury was necessarily instructed on the essential elements of assault by way of the jury instruction on aggravated assault, which was the second count in the two-count indictment. As previously mentioned, the jury found White guilty of burglary of a dwelling but, inexplicably, acquitted him of aggravated assault. White appeals.

**ANALYSIS**

¶11. According to White, he is entitled to a new trial because the circuit court committed plain error in instructing the jury. For the first time on appeal, White argues that the circuit court should have sua sponte instructed the jury on the elements of larceny and/or assault. In other words, White's claim is based on the concept that the essential elements of dwelling-

4

house burglary must also include the essential elements of the crime that he intended to commit when he broke into the Inmans' home.

¶12. White is correct that the circuit court is responsible for assuring that the jury is "fully and properly instructed on all issues of law relevant to the case." *Harrell v. State*, 134 So. 3d 266, 270 (¶14) (Miss. 2014) (quotation omitted). A circuit court commits plain error if it does not instruct the jury on the essential elements of the crime. *Bolton v. State*, 113 So. 3d 542, 544 (¶4) (Miss. 2013). The circuit court instructed the jury that it was to find White guilty of burglary of a dwelling if it found beyond a reasonable doubt that White "did unlawfully, willfully[, and] feloniously break and enter the [Inmans'] dwelling house . . . with the intent to commit the crime of larceny and/or assault . . . ."

¶13. A person is guilty of burglary of a dwelling upon proof beyond a reasonable doubt "of breaking and entering the dwelling house or inner door of such dwelling house of another . . . with intent to commit *some crime* therein . . . ." Miss. Code Ann. § 97-17-23(1) (Rev. 2014) (emphasis added). The prosecution is not obligated to prove that the accused actually committed the underlying offense of the burglary; but it must prove that at the time of the breaking and entry, the accused intended to commit some specific offense. *Daniels v. State*, 107 So. 3d 961, 964 (¶16) (Miss. 2013). That is, the prosecution must "offer proof of the intent to commit some *specific* crime as the second element of burglary." *Id*. (emphasis added). Therefore, the Mississippi Supreme Court has held that because the essential elements of burglary include the intent to commit a *specific* crime, the jury instructions must also identify the specific crime the accused intended to commit. *Id*. at (¶17). The jury must

5

not be allowed "to arbitrarily select some crime of which there was no proof, and use that nonexistent offense to convict [a defendant] of burglary." *Id.*

¶14. Unless a defendant confesses, it is often extremely difficult to determine exactly what he intended to do when he broke and entered someone else's home. As the supreme court has recognized:

> The State seldom has direct and positive testimony expressly showing the specific intent of an intruder at the time he unlawfully breaks into a dwelling house; however, such testimony is not essential to establish the intent to commit a crime. Intent is an emotional operation of the mind, and is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. [A d]efendant's intention is manifested largely by the things he does.

*Dixon v. State*, 240 So. 2d 289, 290 (Miss. 1970). Consequently, circumstantial evidence is adequate to prove that a defendant had felonious intent when he broke and entered a dwelling. *Jackson v. State*, 90 So. 3d 597, 604 (¶27) (Miss. 2012). A defendant's felonious intent "is an issue of fact which falls within the exclusive province of the jury." *Id.* Additionally, jurors are entitled to logically infer that a defendant broke and entered a home with the intent to commit larceny because "[l]aw-abiding citizens do not break into the homes of people they do not know and rummage through their effects, then flee when their actions are discovered." *Id.* at (¶30).

¶15. White cites no authority stating that reversible error is the unavoidable result when a circuit court does not unequivocally instruct a jury on the elements of the intended crime in a burglary trial. However, only in capital-murder cases is a circuit court required to instruct a jury on the elements of the legislatively specified underlying felony that elevates the murder

to a capital offense. *See id*. Instead, the supreme court has held that a circuit court "*should* instruct the jury on the elements of the intended crime . . . .*" Conner v. State*, 138 So. 3d 143, 150 (¶16) (Miss. 2014) (emphasis added). The circuit court is required to instruct the jury fairly – not perfectly – regarding "the applicable rules of law." *Id*. at 149 (¶14). We review the jury instructions as a whole to determine whether the circuit court fulfilled its obligation. *Id*.

¶16.    In *Conner*, the supreme court held that although the circuit court did not instruct the jury on the underlying intended crime for the burglary, the jury instructions as a whole adequately instructed the jury that it was required to find that the defendant "broke and entered the victim's dwelling with the intent to steal." *Id*. at 150-51 (¶16). Therefore, the supreme court affirmed the burglary conviction. *Id*. at 151 (¶16). During the prosecution's closing argument in the present case, the prosecution argued that White most likely intended to steal the Inmans' personal property. The evidence certainly supports that conclusion, since some of Newell's tools were missing. The circuit court instructed the jury that to find White guilty of burglary, it must find that White "intended to commit larceny and/or assault" when he broke and entered the Inmans' home. The jury instructions clearly identified the specific underlying crime that White intended to commit.

¶17.    Additionally, the jury was, in fact, instructed regarding the elements of aggravated assault. The jury could have found that when White saw the Inmans' vehicle approaching the carport, he went inside the storage room to arm himself to commit an assault in case he

was discovered.[3] It is undisputed that the intruder severely beat Newell with a tool. The fact that the jury found White not guilty of aggravated assault is totally irrelevant to the issue of plain error in the jury instruction regarding the elements of burglary. It is impossible to rationalize the jury's inconsistent verdicts in this case. It defies logic that the jury concluded that White broke and entered the storage room with the intent to steal something or commit assault, but somebody else committed the aggravated assault. Whether it was an example of jury nullification or the jury's belief that one felony conviction was simply enough, we will never know. Regardless, the inconsistent jury verdicts are of no concern. *See Sanders v. State*, 63 So. 3d 497, 504 (¶20) (Miss. 2011). White relied solely on misidentification and an alibi as his defenses. When reviewing the legal sufficiency of a burglary conviction, it is totally unnecessary to determine whether there was sufficient evidence to find that the accused actually committed the underlying offense.

¶18.    The plain-error doctrine requires proof of an error that resulted in a "manifest miscarriage of justice." *Blunt v. State*, 55 So. 3d 207, 211 (¶16) (Miss. Ct. App. 2011). The plain-error doctrine has also been construed to include any error that "seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993). If the instructions fairly state the law of the case and create no injustice, then we will not find reversible error. *Wilson v. State*, 72 So. 3d 1145, 1156 (¶31)

---

[3] Based on White's prior criminal history – shown later at his sentencing hearing – either belief of his intention may well have been justified. White had either been previously arrested for or convicted of two prior felonies, drug possessions, three counts of shoplifting, disorderly conduct, simple assault, resisting arrest, petty larceny, multiple counts of trespassing, driving under the influence, malicious mischief, and multiple other similar offenses.

(Miss. Ct. App. 2011) (citations omitted). Taking the jury instructions as a whole, the circuit court instructed the jury on all of the statutory elements of dwelling-house burglary, including the specific underlying offenses. Moreover, the jury was instructed on the essential elements of aggravated assault. It was undisputed that the intruder stole the Inmans' property and assaulted Newell. As stated above, White's defenses were misidentification and alibi. There is no manifest miscarriage of justice because the circuit court did not sua sponte instruct the jury regarding the specific elements of larceny. We decline to reverse the trial judge on an issue never presented to him. Based on the facts of this case, we find no plain error.

¶19.    Additionally, it appears that the supreme court has recently receded from its rather emphatic statement in *Bolton*, 113 So. 3d at 544 (¶4), that the "fail[ure] to instruct the jury on all of the essential elements of [a crime] . . . constitutes plain error." *See also Harrell*, 134 So. 3d at 275 (¶30) ("[I]t is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element."). It is unclear whether harmless error may result from the failure to instruct the jury regarding the elements of the underlying criminal intent of a dwelling-house burglary. In *Jones v. State*, 2012-KA-00374-COA, 2013 WL 3991816 (Miss. Ct. App. Aug. 6, 2013) (final mandate issued Sept. 4, 2014), this Court affirmed a sexual-battery conviction even though the jury was not instructed that it must find that the defendant was at least twenty-four months older than the child victim. It was patently obvious to the jury that the defendant was decades older than the eight-year-old victim. *Id*. The three opinions in *Jones* discussed the

9

fact that some precedent at the time supported a harmless-error analysis under the circumstances.[4] This Court denied rehearing in *Jones* on November 26, 2013. On February 20, 2014, the supreme court granted certiorari. *Jones v. State*, 132 So. 3d 579 (Miss. 2014).

¶20. However, a majority of the supreme court subsequently found that "there is no need for further review, and that the [w]rit of [c]ertiorari should be dismissed." *Jones v. State*, 2012-CT-00374-SCT (Aug. 14, 2014). Presiding Justice Dickinson, joined by three others, issued a separate written statement and included a proposed opinion. *Id*. The proposed opinion stated that the defendant – through his counsel – had waived his right to have the jury instructed on the essential element of the difference between his age and the victim's when the defendant withdrew his correctly worded proposed jury instruction. *Id*. at (¶24). Whether based on harmless error or waiver, the result is the same – Jones's conviction was affirmed. Just as the difference between Jones's age and the victim's was patently obvious to the jury, it was obvious to the jury in this case that the intruder intended to either steal something from the Inmans or commit an assault. Assuming for the sake of discussion that the circuit court erred in this case, that error must likewise be harmless and/or waived. We find no merit to this issue.

¶21. **THE JUDGMENT OF THE CIRCUIT COURT OF QUITMAN COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCE TO RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO QUITMAN COUNTY.**

---

[4] *See Neder v. United States*, 527 U.S. 1, 15 (1999); *Bolton*, 113 So. 3d at 544 (¶4); *Rogers v. State*, 95 So. 3d 623, 632 (¶30) (Miss. 2012); *Berry v. State*, 728 So. 2d 568, 571 (¶6) (Miss. 1999).

**LEE, C.J., GRIFFIS, P.J., CARLTON, MAXWELL AND JAMES, JJ., CONCUR. FAIR, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., BARNES AND ISHEE, JJ.**

**FAIR, J., DISSENTING:**

¶22.    I must respectfully dissent from the majority, due to our supreme court's recent ruling in *Conner v. State*, 138 So. 3d 143 (Miss. 2014).  White was convicted of burglary under Mississippi Code Annotated section 97-17-23(1) (Rev. 2014), which provides:

> Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or  not, with intent to commit some crime therein, shall be punished . . . .

The jury received the following instruction:

> In Count I, if you believe from the evidence in this case beyond a reasonable doubt that:
>
> 1) On or about January 29, 2012, RICHARD WHITE AKA "TONEY BUCK" did unlawfully, willfully [and] feloniously break and enter the dwelling house of Newell Inman and/or Johanna Inman[,] and
>
> 2) said dwelling house was located at . . . Street in Lambert[,] Mississippi, and
>
> 3) said break[ing] and enter[ing] was with the intent to commit the crime of larceny and/or assault there,
>
> then you shall find the defendant guilty of burglary of a dwelling in Count 1.
>
> If the State has failed to prove any one of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty in Count 1.

¶23.    White argues that the circuit court's failure to instruct the jury on the elements of larceny and assault is plain error.  Neither party requested that the jury be instructed on the elements of larceny or assault.  However, that does not render the issue procedurally barred.

11

The circuit court is responsible for assuring that the jury is "fully and properly instructed on all issues of law relevant to the case." *Harrell v. State*, 134 So. 3d 266, 270 (¶14) (Miss. 2014) (quotation omitted). "The crime of burglary requires the jury to find beyond a reasonable doubt that the defendant broke and entered the dwelling house of another with the intent to commit some crime therein." *Conner v. State*, 138 So. 3d 143, 149 (¶14) (citing Miss. Code Ann. § 97-17-23(1)). Jury instructions on burglary must identify the crime the defendant intended to commit. *Id*. (citing *Daniels v. State*, 107 So. 3d 961, 964 (¶17) (Miss. 2013)). The jury was instructed to find White guilty if it concluded, beyond a reasonable doubt, that he unlawfully, willfully, and feloniously broke and entered the Inmans' house with the intent to commit larceny and/or assault. Thus, White's instructions adhered to *Daniels*.

¶24. In *Harrell*, the supreme court found that, for a capital-murder charge, the circuit court's failure to instruct the jury as to the elements of the underlying felony of robbery was reversible error. *Harrell*, 134 So. 3d at 270 (¶14). Four months after the *Harrell* decision, the supreme court held that, for the crime of burglary, as long as the jury is "fully and fairly informed" of the intent requirement for burglary, jury instructions need not list the elements of the underlying crime. *Conner*, 138 So. 3d at 149 (¶16).

¶25. Now, with *Conner* in mind, we must determine whether the jury was "fully and fairly informed" of the intent requirement for burglary. *See id*. In this case, the jurors were instructed that they could find White guilty of burglary if they found he unlawfully, willfully, and feloniously broke and entered the dwelling with the intent to commit larceny and/or

12

assault. Likewise in *Conner*, 138 So. 3d at 149 (¶12), the defendant was charged with burglary of a dwelling with the intent to commit larceny. The jury was not instructed on the elements of larceny. *Id*. But the circuit court specifically instructed the jury that the "required intent" they had to find was "intent to steal."[5] *Id*. at 150 (¶16). *See also Blythe v. State*, 141 So. 3d 407, 413 (¶18) (Miss. Ct. App. 2013). The court also instructed the jury that "[a]n inference of the intent to steal may arise from proof of the breaking and entering." *Conner*, 138 So. 3d at 150 (¶15). Our supreme court affirmed Conner's conviction, stating:

> While *the trial court should instruct the jury on the elements of the intended crime in a burglary trial*, here, the jury instructions correctly instructed the jurors that they could find Conner guilty of burglary if they found he broke and entered the victim's dwelling with the *intent to steal*. We find that the jury instructions fairly, although not perfectly, instructed the jury on the applicable law . . . .

*Id*. at (¶16) (emphasis added).

¶26.    The *Conner* decision relied on the fact that, although no instruction listed the elements of larceny, Conner's jury had received separate instructions on larceny that were sufficient to inform the jury of the applicable law. *Id*. Unlike the jury in *Conner*, the jury in this case received no separate instructions on larceny or assault. The majority affirms White's conviction because there was undisputed evidence of theft and assault. But *Conner* did not draw factual or evidentiary distinctions when concluding that a jury should be instructed on the intent requirement for burglary.

¶27.    As stated by the majority, the plain-error doctrine has been construed to include error

---

[5] Larceny requires the specific intent to steal or "deprive the owner of his property." *Slay v. State*, 241 So. 2d 362, 364 (Miss. 1970).

13

that "resulted in a manifest miscarriage of justice" or "seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *Brown v. State*, 995 So. 2d 698, 703 (¶21) (Miss. 2008) (citation omitted). We apply the plain-error rule only when the error affects a defendant's fundamental rights. *Id*. As this Court stated in *Blunt*, "[d]ue[-]process rights include the right to a properly instructed jury." *Blunt v. State*, 55 So. 3d 207, 211 (¶16) (Miss. Ct. App. 2011). *See also Shaffer v. State*, 740 So. 2d 273, 282 (¶31) (Miss. 1998) (holding that the trial court's failure to instruct the jury properly on the elements of the crime charged denied the defendant due process). White's jury instructions did not list the elements of the underlying crimes of larceny or assault. Nor did his instructions "fully and fairly inform[] the jury of the intent requirement for burglary," in conformity with *Conner*. *Conner*, 138 So. 3d at 149 (¶16). So the jury instructions did not "fairly . . . instruct[] the jury on the applicable law." *Id*. at 150 (¶16). As a result, I would reverse the circuit court's judgment and remand White's case to the circuit court.

**IRVING, P.J., BARNES AND ISHEE, JJ., JOIN THIS OPINION.**