# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00756-COA

**JACOB PERRY JOHNSEY**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                     **APPELLEE**

DATE OF JUDGMENT:              05/10/2018
TRIAL JUDGE:                  HON. CHRISTOPHER A. COLLINS
COURT FROM WHICH APPEALED:    LEAKE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                              BY: JUSTIN TAYLOR COOK
                              PHILLIP W. BROADHEAD
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: MATTHEW W. WALTON
DISTRICT ATTORNEY:            STEVEN SIMEON KILGORE
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED - 10/22/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GREENLEE, P.J., WESTBROOKS AND LAWRENCE, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.     A Leake County jury found Jacob Johnsey guilty of burglary of an unoccupied dwelling.  As a result of his conviction, Johnsey was sentenced to serve seven years as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2018).  Johnsey now appeals and claims that the circuit court violated his constitutional right to assert his own defense theory and to have the jury properly instructed.  We affirm the circuit court's finding that Johnsey was not entitled to a lesser-included offense instruction on trespass and affirm.

## FACTS

¶2. The facts leading up to Johnsey's conviction are simple. Danny Freeny owned a home and property located at 4198 Dossville Road in Leake County, Mississippi. The home previously belonged to Danny's mother-in-law. Danny kept cows on the property, so he made a point to visit the property twice a week. On December 20, 2014, Danny went to check on the property. The home should have been vacant, because no one lived there. This time, however, instead of merely finding his cows, Danny also found an unfamiliar black Cadillac under the carport.

¶3. Danny parked his tractor behind the Cadillac to block it in. He noticed a person named Tasha Vickers "slouched down" in the front passenger's seat. Danny did not know Tasha. As Tasha pressed the horn of the Cadillac, Danny saw Johnsey exit the home's utility room. Danny testified that Johnsey said he was "looking for so and so" and that Danny said he was going to call 911. Suddenly, Tasha's brother Troy ran from the utility room and jumped into the Cadillac through an open window. Johnsey got into the vehicle and drove away. Danny gave chase on the tractor and actually hit the Cadillac with his tractor. Johnsey, Tasha, and Troy all managed to get away, and Danny called 911.

¶4. Deputy Vince Carter with the Leake County Sheriff's Department arrived shortly thereafter. As he was investigating, Deputy Carter and Danny both noticed the doorframe to the home was damaged. Deputy Carter testified that the damage appeared to be from "some type of object [used] to pry the utility door open." Marilyn Freeny, Danny's wife,

2

testified that inside the home she noticed that the dresser drawers and some of the cabinets were open. There were also drawers in the kitchen that were open and appeared to have been "rummaged" through. Both Marilyn and Danny testified that these drawers and cabinets were never left open. Deputy Carter testified that the appearance of the drawers and cabinets made it seem like someone was "looking for something."

¶5.     Johnsey was arrested after Danny provided his license plate number to police. Deputy Carter testified that the license plate number showed that the Cadillac was registered to Johnsey. Johnsey admitted being at the home on December 20, 2014, and admitted to trespassing. However, he claimed that he was never inside the home and had never met Danny. Johnsey's version of events was that he and Troy were merely asking for directions because they were not from the Leake County area. Johnsey testified that the utility-room door was open but that neither he nor Troy opened the door.

¶6.     At trial, the defense proposed Jury Instruction D-7, which was a lesser-included offense instruction on trespass. The State objected and argued that the jury could not find that Johnsey was trespassing because "he had no knowledge that he was not allowed on the property" and that "[t]here has been no testimony that would support a finding of trespass under the laws of trespass." The circuit court refused the instruction because "[t]here [was] an element that [was] not in common with the two crimes" but still instructed the defense that they could make that argument to the jury.

¶7.     The jury found that the evidence did not support Johnsey's story that he was merely

asking for directions and found him guilty of burglary of an unoccupied dwelling in accordance with Mississippi Code Annotated section 97-17-33(1) (Rev. 2014). Johnsey now appeals and asks that this Court consider whether the circuit court erred in refusing his proposed lesser-included offense instruction on trespass.

## ANALYSIS

¶8.    Johnsey's single issue on appeal is whether the circuit court was required to instruct the jury on the lesser-included offense of trespass.   Johnsey argues that it was his fundamental right to assert his theory of defense and that the circuit court denied him of that right by refusing to give Instruction D-7.  Questions of whether a defendant is entitled to a lesser-included offense instruction are questions of law that this Court reviews de novo. *Downs v. State*, 962 So. 2d 1255, 1258 (¶10) (Miss. 2007).  The supreme court has stated:

> The question is not whether the evidence was sufficient so that a rational jury could have found beyond a reasonable doubt that [the defendant] broke into the [victim's] home with intent to [commit a crime] but whether the evidence is so clear that no reasonable juror could have accepted [the defendant's] theory that his intent to [commit a crime] was formed after he was in the house. . . .
>
> [A] lesser-included offense instruction should be granted unless the trial judge—and ultimately this Court—can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser-included offense (and conversely not guilty of at least one essential element of the principal charge).

*Jackson v. State*, 90 So. 3d 597, 605 (¶34) (Miss. 2012) (quoting *Harper v. State*, 478 So. 2d 1017, 1021 (Miss. 1985)).  The circuit court is given great deference in its decision to instruct

4

the jury.  *Id.* at 606 (¶34).

¶9.     Johnsey's proposed instruction read as follows:

> The Court instructs the Jury, if any person or persons shall without authority
> of law go into or upon or remain in or upon any building, premises or land of
> another, . . . **after having been forbidden to do so**, either orally or in writing
> including any sign hereinafter mentioned, by any owner, or lessee, or
> custodian, or other authorized person, . . . such person or persons shall be
> guilty of a trespass.

(Emphasis added).   This instruction tracks the language of Mississippi Code Annotated

section 97-17-97 (Rev. 2014).  When considering whether to give a jury instruction, the trial

courts are tasked with considering "the evidence before [them] at the time [they] considered

the issue of whether to [give] or [refuse]" the instruction.  *Jackson*, 90 So. 3d at 606 (¶36).

The evidence presented to the jury was that Danny noticed an unfamiliar car in the carport

and that an unknown female, Tasha, was occupying the passenger seat in that car.  Danny

testified that at the moment he approached the unfamiliar vehicle, the unknown female began

to blow the horn.  It was at that moment that Danny saw Johnsey exit the utility room of the

home.

¶10.    The owners did not know Johnsey and had never met him before. The owners had no

signs posted commanding trespassers to remain off the property and, just as importantly, had

never told Johnsey to stay off the property.

¶11.    Johnsey denied ever being in the home.[1]  He claimed to just happen to be exiting the

---

[1] This Court recently reversed a conviction for failure to give a lesser-included
trespass instruction in *Grayer v. State*, No. 2018-KA-00391-COA, 2019 WL 3691162, at

5

utility room, the room off the garage that leads to the house's interior, when he heard a horn blow. Still, it is important to note that the utility room led to the interior of the home. The utility-room door had been damaged in an effort to gain entry. Further, inside the home, drawers and cabinets in several rooms had been opened and rummaged through. The facts of this case create a unique situation where the refusal of a lesser-included trespass instruction has been upheld by the Supreme Court.

¶12. Johnsey relies on *Harper v. State*, 478 So. 2d 1017 (Miss. 1985), to support his argument that he was entitled to his proffered instruction. In *Harper*, the supreme court stated that a lesser-included offense instruction on trespass in a burglary case should be given when "taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense. . . ." *Id.* at 1021. The court ultimately ruled that the lesser-included offense instruction should have been given. *Id*. The facts in *Harper* are different from the facts of this case. Harper admitted that he knew the owners of the property and that he was on the property to see his daughter who lived with his ex-wife. *Id*. He further admitted he had been told to stay off the property. *Id*. at 1018. Here, Johnsey did not know the owners of the property, had never been on the property before, and more importantly denied ever being in

*2 (¶12) (Miss. Ct. App. Aug. 6, 2019). Unlike this case, in *Grayer*, the defendant was found inside the building and claimed he had fallen asleep. *Id*. at (¶9).

6

the home.

¶13.     The facts of this case present one of those unique situations that the supreme court addressed in *Jackson*, 90 So. 3d at 605-07 (¶¶ 33-41).   In *Jackson*, the supreme court affirmed the refusal of a lesser-included trespass instruction. *Id*. at 607 (¶41).  In that case, a Hinds County sheriff's deputy responded to an alleged burglary to find that the door of a home had been "kicked in." *Id*. at 600 (¶6).  The deputy also found that another door had been broken open, several drawers inside the home were pulled open, and personal property was scattered everywhere. *Id*.  The supreme court held that "no reasonable jury would have found that Jackson's sole crime was trespass without the intent to commit larceny." *Id*. at 607 (¶40).  The combination of not knowing the homeowner, clear evidence of breaking and entering, along with a clear intent to steal were enough to refuse a lesser-included offense instruction on trespass. *Id*. at 608 (¶42).

¶14.     In the case at bar, the jury heard testimony that the home was kept neat and that the drawers inside the home were closed.  Danny saw an unfamiliar car parked in his carport with an unknown woman in the passenger seat.  When he approached the car, the woman started blowing the horn.  Johnsey came out of the home and began talking to Danny as another male ran out of the home and, Dukes of Hazzard style, jumped into the car.  From there, the three strangers tried to flee.  Danny gave chase to the car, actually damaged the car, and later gave police a description of the fleeing vehicle, which was stopped a short time later.  A closer inspection of the inside of the home showed that the drawers and cabinets

7

inside were open, and items contained within were strewn about. The utility-room door was damaged and had been pried open.

¶15. The facts of this case are exactly like *Jackson* instead of *Harper*. The combination of Johnsey not knowing the victims (meaning he was never told to stay off the property), clear evidence of a breaking and entering (the utility door was damaged and had been pried open), along with evidence of a clear intent to steal (the drawers and cabinets had been opened and ransacked) created a situation where our supreme court has affirmed the refusal of a lesser-included trespass instruction.

¶16. There is nothing in the record to support a finding that, when taking the evidence in the light most favorable to Johnsey, a reasonable jury could find Johnsey guilty of only the lesser-included offense of trespass. As such, there was no basis to support a lesser-included offense instruction on trespass, and the circuit court did not err in refusing instruction D-7. We affirm Johnsey's conviction and sentence.

¶17. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., AND McDONALD, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

8